In the Matter of the Application for a Writ of *Habeas Corpus* for MARTIN CONWAY and JAMES GIBBONS.

Persons of foreign birth who have declared their intentions to become citizens of the United States, and have become qualified electors of this state under subd. 2, sec. 1, art. III of the state constitution, and have exercised the right of suffrage thus conferred, are liable to be enrolled in the militia of this state, and to

be drafted into the military service of the United States, under the acts of congress and of the state legislature, in force on the 9th of July, 1863.

The children of such persons, who came into this country with their parents while minors, and have since attained full age, and have resided in this state more than one year, are not qualified electors thereof, nor liable to such enrollment and draft, in case their fathers were never fully naturalized, and they themselves have never declared their intentions in conformity with the naturalization laws. And they are not, under existing laws, rendered liable to such enrollment and draft by having voted illegally.

APPLICATION for a writ of *Habeas Corpus.*

On the 9th of July, 1863, Owen Caine applied to this court for a writ of *habeas corpus* in favor of *Martin Conway* and *James Gibbons*, alleged to be unlawfully restrained of their liberty at Camp Randall in the city of Madison, by Capt. Samuel Harriman, commandant of said camp. The writ was ssued and served ; and, in obedience thereto, on the 14th of the same month, Capt. Harriman appeared in the court with the bodies of said *Conway* and *Gibbons*, and made return that they were committed to his custody on the 9th of said month, by the deputy provost marshal of the 3d district of Wisconsin, who claimed that they were drafted into the army of the United States for the period of nine months, and had refused or neglected to report to the proper officers as required by law.

It appeared, at the hearing, that said *Conway* and *Gibbons* were in fact drafted as represented in said return ; that they were persons of foreign birth, who had come to this country, while minors, with their parents ; that their fathers had declared their intentions to become citizens of the United States, in conformity with the acts of congress relating to naturalization, had resided in this state more than five years, and had voted here, but had never taken out their second papers ; and that the sons had also resided in this state more than five years, and were of full age, and had voted, but had never declared thier intentions to become citizens.

*Geo. B. Smith*, for the relator.

*Jno. B. D. Coggswell*, United States District Attorney for Wisconsin, *contra.*

*By the Court*, PAINE, J. The laws of congress, and of this state, use the word "citizen" as designating those who are liable to be enrolled in the militia. In the recent case of *Carl Wehlitz*, 16 Wis., 443, we held that this word, in the acts of congress, was not designed to include only those who were full citizens of the United States, but also those of foreign birth who had declared their intentions to become such, and who had become citizens of this state according to our constitution and laws. The question now presented is, whether the children of such persons, who came to this country with their parents, while minors, but have since attained full age and have voted in this state, are liable to be enrolled and drafted? And this must depend upon the question, whether such children can be considered "citizens," within the meaning of the laws of congress. That they cannot be regarded as citizens of the United States under those laws, in the full sense of the term, must be conceded. By the 3d section of the act of congress, as published in Brightly's Digest, p. 35, the minor children of such aliens as become fully naturalized, are to become citizens by virtue of such naturalization of their fathers. And section 10 provides how an alien who has resided in this country three years next preceding his arrival at the age of twenty-one, may become a citizen. The fathers of the persons for whom this application is made, never having been been naturalized, but only having declared their intentions, and these persons never having themselves taken the steps prescribed by section ten, they cannot be regarded as full citizens of the United States under the laws of congress.

If, then, they are to be included at all, it must be because they are citizens of this state, within the rule adopted in the Wehlitz case. But we are unable to see how they can be so regarded. In respect to their fathers, our constitution and

laws are clear. The right of citizenship of this state was conferred on them, so far as it is possible for a state to confer a citizenship of itself on an alien without his being fully naturalized under the laws of congress. And it is true that if those who framed our constitution and laws had followed the analogy suggested by the acts of congress on this question, they would have provided that the minor children of such persons should, on coming of age, be entitled to like rights of citizenship in this state as their fathers. But they made no such provision. And whether it was a *casus omissus* or designed, courts can only take the law as they find it. Does the fact that they have voted here make them citizens of this state? Certainly not. Our laws gave them no right to vote, and if they have voted they have voted illegally, and are liable to punishment. But such illegal voting surely cannot alter their political status or enlarge their rights. It may be entirely competent and expedient for congress to enact that any alien who votes in any state shall be liable to military duty and be estopped by his own act from denying his citizenship. But they have not done so; and the only question, as the law now is, is whether the party is a citizen or not. When this point was under discussion, reference was made to the opinions of the secretary of state, and of the secretary of war, in which they held that those who had voted were liable to the draft. But we understand that they were speaking only of such as had declared their intentions, and then voted. In such cases the act of voting is significant and material. For it may perhaps be said that no state can impose the rights or duties of citizenship upon aliens who do not choose to have them. But in all cases where the state confers the right of state citizenship on aliens who have declared their intentions to become citizens of the United States, the act of voting is conclusive proof of an acceptance of such state citizenship by them. Therefore they would be included in the laws of congress, which designed to

Vol. XVII—34

reach such state citizens, as well as full citizens of the United States.

But where the state confers no citizenship, no right to vote, the act of voting, as the law now is, must be immaterial. It would be a mere illegal act, not significant of any acceptance of citizenship by him, because none was offered him to accept.

We think, therefore, that these parties were not liable to be drafted, as the law now is, and that they must be discharged.