## HILGERS vs. QUINNEY.

*December 20, 1880 — January 11, 1881.*

CONSTITUTIONAL LAW: TAX PROCEEDINGS. *(1) When an Indian becomes an elector of this state, and his land taxable.   (2) Posting notices of tax sale; fatal defects in affidavit.*

1. After defendant's father, a person of Indian descent, had long been in the exclusive occupancy of a certain tract of land as his farm and house, and it had been allotted to him (from the Stockbridge reservation), and he had cultivated and improved it, and otherwise treated it in every respect as his private property, an act of congress, passed for his exclusive benefit, authorized the payment to him of a certain sum of money belonging to the Stockbridge tribe, and granted said tract to him "in fee simple, and to his heirs and assigns forever," in lieu of all his rights in the lands and annuities of the Stockbridge tribe, etc., and a patent of the land was issued to him in accordance with said act, and "for the

considerations therein mentioned." This land he devised to the defendant; and neither the father nor the son appears ever to have submitted to any of the laws, customs or regulations of any tribe, but adopted and always retained the manners, habits and industries of civilized life. *Held*, that both father and son were within the provisions of subd. 4, sec. 1, art. III of our state constitution (which provides that "civilized persons of Indian descent, not members of any tribe," having the prescribed qualifications as to sex, age and residence, shall be qualified electors in this state); and that said tract of land, now owned by defendant, is held "by purchase," within the meaning of subd. 6, sec. 1038, R. S., and is subject to taxation under the laws of the state. *Farrington v. Wilson*, 29 Wis., 383, distinguished.

2. The statute required the county treasurer, before the time fixed for the sale of lands for delinquent taxes, to cause to be posted copies of the statement and notice of sale "*in* at least four public places in such county, one of which copies shall be posted up *in some conspicuous place in his office.*" The treasurer's affidavit in this case states that such copies were posted "*at* four public places in the village of Chilton in said county, one *at* the Chilton House, one *at* the drug store of W. M., one *at* the Washington House, and one *at* the office of the county treasurer." *Held*, that this is insufficient to show compliance with the statute, and that the defect cannot be supplied by other proof, and is fatal to the tax deed executed upon the sale.

APPEAL from the Circuit Court for *Outagamie* County.

Ejectment, for lot 72, town of Stockbridge, Calumet county. The complaint is in the usual form. Answer, a general denial. The defendant is an Indian, and is in possession of the premises, claiming title thereto by descent from John W. Quinney, his father, who held the land under a patent from the United States dated July 1, 1854. This patent was issued in pursuance of an act of congress, approved January 27, 1853, entitled, "An act for the relief of John W. Quinney, a Stockbridge Indian." The plaintiff claims under three tax deeds dated June 21, 1875, for taxes of 1869, 1870 and 1871. The evidence tended to prove that for those years the premises in question, together with all the other lands in the same town, were assessed at one-half their actual value. Other evidence will sufficiently appear from the opinion. The court directed

a verdict for the plaintiff; and, from a judgment on such verdict, the defendant appealed.

For the appellant there was a brief by *C. W. Felker*, his attorney, with *W. B. Felker*, of counsel, and oral argument by *W. B. Felker:*

1. The lands in question were exempt from taxation. R. S., sec. 1038, subd. 6;[1] *Farrington v. Wilson*, 29 Wis., 383. The defendant being an Indian, the burden of proving that he is a citizen rests upon the plaintiff. R. S. of U. S., sec. 2126; *Goodell v. Jackson*, 20 Johns., 693. There was no proof that he had ever become a citizen of the United States. And there can be no state citizenship in contradistinction to citizenship of the United States. Though a state may grant to aliens some of the attributes of a citizen, it cannot confer citizenship. The constitution of the United States recognizes but two classes, citizens and aliens. A citizen can enforce his rights as such in every state in the union. Const. of U. S., art. IV, sec. 2. An alien, clothed with only such privileges as the state in which he has been domiciled may have seen fit to grant him, can, upon removal to another state, enforce no right of citizenship. Privileges are strictly local. 2 Kent's Comm., 71; *Scott v. Sanford*, 19 How., 393. Again, the sovereign power, while it may proffer citizenship, cannot compel its acceptance by an alien. Much less can a state impose citizenship upon aliens who are under the guardianship of the general government. Had the legislature intended the word "citizen" to include Indians other than those recognized by the general government as citizens, the provisions of the statute would as to such have been contrary to the constitution

---

[1] Sec. 1, ch. 130, Laws of 1868, was in these words: "Taxes shall be levied upon all property in this state except such as is exempted therefrom." Subd. 6, sec. 2 of that act, exempted "the property of Indians who are not citizens, except lands held by them by purchase." These provisions were in force in 1869–1871, and are found as sec. 1034 and subd. 6, sec. 1038, R. S. 1878.— REP.

and laws of the United States, and therefore void. *U. S. v. Holliday*, 3 Wall., 407; *Me-shing-go-me-sia v. State*, 36 Ind., 310; *The Kansas Indians*, 5 Wall., 737; *The New York Indians*, id., 761; *U. S. ex rel. Davis v. Shanks*, 15 Minn., 369. 2. The tax deeds are void. The lands were not assessed at their full value. Sec. 16, ch. 130, Laws of 1868. The statute in this respect is mandatory, and a failure to comply therewith vitiates the entire assessment. Without a valid assessment there could be no valid tax. Cooley on Taxation, 213, 215; *Marsh v. Supervisors*, 42 Wis., 502; *Wendel v. Durbin*, 26 id., 390; *Whitney v. Brunette*, 15 id., 68; *Hopkins v. Langton*, 30 id., 379; *Hersey v. Supervisors*, 37 id., 75; *Shettler v. Ft. Howard*, 43 id., 48; *Philleo v. Hiles*, 42 id., 527. The notices of the tax sale were not posted according to law. Tay. Stats., ch. 18, §§ 133, 137. This statute, too, is mandatory, and must be strictly complied with. Cooley on Taxation, 218, 219, 334; *Jarvis v. Silliman*, 21 Wis., 600; *Matteson v. Rosendale*, 37 id., 254. Defects in the affidavit of posting cannot be supplied by evidence *aliunde*. *Iverslie v. Spaulding*, 32 Wis., 394; *Hersey v. Supervisors*, 37 id., 75; *Marsh v. Supervisors*, 42 id., 514.

For the respondent there was a brief by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *Mr. Cotzhausen:*

The burden of proving that the lands were exempt, rests upon the defendant. *Prima facie* all lands are taxable which have become private property, and the right to tax attaches as soon as the particular tract is segregated from the public domain. *Witherspoon v. Duncan*, 4 Wall., 210; *Whitney v. Gunderson*, 31 Wis., 378; *Eaton v. North*, 20 id., 449. The lands in question were granted to John W. Quinney upon a valuable consideration which is expressed in the act of congress. This was the release of all his claims to lands and annuities of his tribe. They were his, therefore, by purchase. 4 Kent's Comm., 415; 1 Steph. Comm., 354; 2 Bl. Comm., 241. The defendant failed to show that his father and himself

were not citizens. The evidence tended strongly to prove that they were. The assessment law (ch. 130, Laws of 1868) contemplated state, and not United States, citizenship. One may have all the rights and privileges of a citizen of a state, and not be a citizen of the United States. *In re Wehlitz*, 16 Wis., 443. There is no express provision as to the manner in which an Indian may become a citizen, but the question whether he has become one must be determined from all the circumstances in the case. And especially significant among such circumstances is the exercise of the elective franchise. The right of voting and holding office is classified among the most complete and perfect attributes of citizenship. *In re Wehlitz, supra; In re Conway and Gibbons*, 17 Wis., 526; Const. of Wis., art. III; R. S., ch. 7. 2. The affidavit of posting notices of the sale for taxes was sufficient. A literal compliance with the statute has never been exacted, and mere informalities or unimportant variances in an attempt to comply with the law are not fatal. *Ogden v. Harrington*, 6 McLean, 418; *Scott v. Watkins*, 22 Ark., 556.

ORTON, J. We think that it was conclusively shown by the evidence, including his own testimony, that the appellant is, and, since he became of age, has been, a citizen of this state, by every test known to our constitution and laws, and, so far as his being a "civilized person of Indian descent, and not a member of any tribe," can make him such. Subdivision 4, art. III, State Const.; *In re Wehlitz*, 16 Wis., 443; *In re Conway and Gibbons*, 17 Wis., 526. He does not testify that he ever belonged to any tribe of Indians, or ever participated in any government reservation or bounty for the benefit of any tribe, or ever submitted to any of the laws, customs, rules or regulations of any tribe; and, according to his own evidence and the testimony of other witnesses, he has at least claimed the right of suffrage as a citizen, and has always adopted the manners customs, habits and industries of civilized life. In

his education, his domestic and social relations, the conduct and management of his business, and in the accumulation of property, he has occupied no mean grade in civilized society, and, in many respects, above a large class of the white population of the state. This was also the *status* of John W. Quinney, the father of the appellant, in his lifetime, according to a clear preponderance of the evidence. But, as to him, the patent of the government to him of the land in question, and the act of congress approved January 27, 1853, in accordance with which it was issued, and his acceptance of the grant on the terms in which it was made, are conclusive against his further connection to any material extent with his tribe, and of his full adoption of all of the relations of civilized life. He had long been in the exclusive occupancy of this land as his farm and home, and it had been once allotted to him, and he had cultivated and improved it, and otherwise treated it in every respect as his own private property. The act of congress was for his exclusive benefit, and he must be presumed to have approved, if he did not procure, its passage; and it is significant that, when introduced, it not only provided for this grant, but it also declared John W. Quinney a citizen of the United States. It finally passed without this declaration, presumably on constitutional grounds. It authorized the payment to him of $1,000, more or less, of the money belonging to the Stockbridge tribe of Indians, and granted to him "in fee-simple, and to his heirs and assigns forever," the land in question, "in lieu of all rights of John W. Quinney in the lands and annuities of the Stockbridge tribe of Indians, and in the annuities, money and land to which said Indians now are or may hereafter be entitled under existing treaties." The patent was issued in accordance with this act, and "for the considerations therein mentioned." The acceptance of this grant divested him of every right which he had in common with his tribe, and was the most conclusive act which he could perform to divorce and separate himself from his tribe. This land he de-

vised to his son, the appellant. From this evidence the true *status* of both the father and the son is most clearly and conclusively shown to be that of "civilized persons of Indian descent, not members of any tribe." The treaties, reports and public documents referred to on the argument show nothing conclusive of this question either way, but they tend strongly to confirm this view. This conclusion may not be important, and may be irrelevant so far as the taxability of this land is concerned, but may have an important bearing upon the construction of the act of congress and the patent, and on the question whether the land is held "by purchase," and therefore taxable within the statute. If it is so held, it is immaterial whether the Quinneys were citizens or not; the land is not exempt from taxation. That it was so obtained and held by John W. Quinney, is too plain for argument. The surrender of all of his rights to the lands and annuities of his tribe, and of all moneys, lands and annuities then belonging, or which might thereafter belong, to his tribe, whereby he parted with things of great value, is mentioned in the patent itself as the consideration of the grant; and the only reasonable interpretation of the act of congress and the patent is, that John W. Quinney purchased this land of the government, and the government sold and conveyed it to him in fee-simple, in consideration of this surrender — a consideration deemed adequate and sufficient by the congress of the United States when it made the grant. By all authorities, this was as much a purchase of government land by John W. Quinney as could have been made by any other person.

This conclusion is not reached, but is confirmed, by the fact that John W. Quinney had already adopted the manners and habits of civilized life, and by what, at least, should be the policy of the government in respect to such persons — to dissolve their tribal relations and encourage their private ownership of land, and its cultivation and improvement as a farm, and their permanent settlement and civilization, whenever

it could be done with their consent. The question whether this land was held by the Quinneys "by purchase," within the meaning of the statute, was expressly reserved by this court in *Quinney v. The Town of Stockbridge*, 33 Wis., 505, because the title now shown did not then appear, and was therefore not considered; but there is a strong intimation in the opinion of the court in that case, that the title, when exhibited, might probably show a *purchase* from the government by showing a valuable consideration paid for the land. The learned chief justice says in his opinion: "For aught that is alleged in the complaint, the land may have been held by John W. Quinney, the ancestor of the plaintiff, 'by purchase,' according to the definition given these words, and the interpretation put upon the statute in the case above referred to *(Farrington v. Wilson*, 29 Wis., 383), which would make the land taxable. John W. Quinney, or the person from whom he acquired, may have held 'by purchase,' in the ordinary and popular acceptation; that is, *for a valuable consideration paid for the land.*" The act of congress and the patent together do show "a valuable consideration paid for the land," and by that decision, therefore, do show that the land was held "by purchase."

There is nothing in the case of *Farrington v. Wilson*, *supra*, that militates against this conclusion; for in that case the patent was issued to Antoine Grignon, according to a treaty made with the Winnebago tribe of Indians — he being a member of that tribe,— and the patent contains a prohibition against alienation of the land, and there was no valuable consideration for the grant. What is said by the learned chief justice in his very able opinion in that case, must be restricted in its application to the facts of that case; and, however general the language may be on some questions, it cannot embrace a case like this, where nearly all of the facts are so essentially different. We therefore conclude that this land has been held "by purchase" since July 14, 1854, the date of the patent,

and has therefore been subject to assessment and taxation, and not within the statutory exception.

This being the most important question in the case, and of considerable public as well as local interest, and it having been very fully and ably argued by the learned counsel on both sides, it was thought best to decide it, although, as we are compelled to hold the tax deed by which the plaintiff claims title void for other reasons, it might not be strictly necessary to do so.

The affidavit of the county treasurer, as proof of the posting of the statement and notice of sale, is clearly defective, and not in compliance with the statute, which in this respect is mandatory and imperative.   The statute (Tay. Stats., ch. 18, § 133) is as follows: "And such treasurer shall also, at least four weeks previous to said day, cause to be posted up copies of said statement and notice *in* at least *four public places in such county*, one of which copies shall be posted up *in some conspicuous place in his office.*"   The affidavit states that such copies were posted "*at* four public places in the village of Chilton in said county — one *at* the Chilton House, one *at* the drug store of William Mahoney, one *at* the Washington House, and one *at* the office of the county treasurer." There are at least three substantial departures from the statute in this affidavit, as ·proof of due notice.   *First.* Treating the preposition *at* as identical in meaning with the preposition *in*, it does not state that such copies were posted up at four public places within such county.   It may be said that it does state *inferentially* that they were posted up at four public places in such county, because it states that the village of Chilton is in such county, and they were posted up in that village, and therefore in such county.   But compliance with a statute so imperative, and in respect to a matter so essential as a notice of sale, ought not to rest in mere *inference* and speculation.   It may be that four places, or the places named,

Hilgers vs. Quinney.

in the village of Chilton, are *public* places so far as that village is concerned, and not public places so far as the whole county is concerned, within the meaning of the statute. We do not choose to speculate upon this question, and determine, as matter of law in this case, whether it will answer as well the requirement of the statute if such notices are all posted in one village in the county, as if some of them were posted in other public places within the county, or whether such places should be in different and distant sections of the county. Indulging in such speculations and latitude of construction might lead to conclusions which would entirely defeat the intention of the legislature in passing the statute, and the very object of such notices of sale. We choose rather to insist upon a compliance with the statute so strictly and substantially as to be unquestionable, when the statute itself is so plain and certain. *Second.* The same may be said as to the departure from the statute in the use of the word *at* instead of *in*, in respect to the places mentioned. The legislature have seen fit to use the word "in," presumably for good reasons; and one reason may have been that it would better express the places, such as villages, cross-roads, school-houses and other public places in different and distant sections of the county; and another, that it is more definite and specific than the term *at*. Certain it is that these words are not synonymous, and may have very different meanings, depending upon their connection, and to give them the same meaning in any case, by construction, might be forcing them arbitrarily out of their natural and generally accepted meaning, and lead at best to mere uncertainty. *Third.* The statute requires at least one of the copies to be posted up "in some conspicuous place in his (the treasurer's) office." The affidavit states merely that one of the copies was posted up "at the office of the county treasurer." This is a clear non-compliance with the statute, too apparent and substantial to require further consideration than mere mention. These defects are fatal to the validity of the tax deed *(Jarvis v. Silli-*

*man*, 21 Wis., 600; *Matteson v. Town of Rosendale*, 37 Wis., 254), and they cannot be cured or supplied by evidence *aliunde*. *Iverslie v. Spaulding*, 32 Wis., 394. The plaintiff failed in his proof of title, and the judgment must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial therein.