PEDRO, Appellant, vs. GROOTEMAAT, Respondent.

*May 5—May 31, 1921.*

*Taxation: Sales of land for taxes: Notice and statement of sale:
   Uniform county government: Posting and publication: Proof:
   Constitutional law: Special legislation: Disposition of case.*

1. Under sec. 1130, Stats., the posting as well as the publishing
   by the county treasurer of a statement of all lands upon
   which the taxes have not been paid, together with a notice
   of tax sale thereof, is essential to the validity of a tax deed,
   the word "post" having a meaning distinct from that which
   is implied by the term "publication."

2. Sec. 1131a, Stats., dispensing with such publication, in counties
   containing a city of the first class, of a statement of the lands
   on which taxes are delinquent, required by sec. 1130 generally,
   is special legislation, violative of sec. 23, art. IV, Const.,
   requiring the establishment of but one system of town and
   county government, which shall be as nearly uniform as prac-
   ticable, and of sec. 31 of art. IV, prohibiting the enactment
   of any special law for assessment or collection of taxes, the
   classification having no logical basis.

3. The deposit by plaintiff of the amount of taxes, etc., required
   by secs. 1210h and 1210h—1, Stats., as a prerequisite to the
   maintenance of an action to set aside a tax sale or to cancel
   a tax certificate or to restrain the issuing of a tax deed, is
   not necessary in an action of ejectment, where plaintiff is
   entitled to recover by reason of a defect in defendant's tax
   title, this matter being governed by sec. 3087, Stats.

4. Upon a determination by this court that the judgment in de-
   fendant's favor was erroneous because of defects or deficien-
   cies occurring in the tax proceedings, the judgment is ordered
   affirmed, unless within ninety days the plaintiff will repay
   the amounts expended by the defendant for taxes and dis-
   bursements with interest at the rate of fifteen per cent.

APPEAL from a judgment of the circuit court for Mil-
waukee county: LAWRENCE W. HALSEY, Circuit Judge. *Re-
versed upon condition.*

This is an action in ejectment, brought by the plaintiff,
the original owner of the premises in question, against the
defendant, who claims title under a tax deed.

The complaint, among other things, alleges that the plaintiff has an estate in fee simple in the south twenty (20) feet of lot numbered eight (8), and all of lot numbered nine (9), in block ten (10), in College Heights, part of the southwest quarter of section numbered three (3), in township numbered seven (7) north, of range numbered twenty-two (22) east, in the village of Shorewood, in the county of Milwaukee and state of Wisconsin; that the plaintiff is entitled to the possession of said premises; that the defendant unlawfully withholds the same from her, to her damage.

Judgment against the defendant for the possession of the premises is demanded, and for six cents damages, and the costs and disbursements of the action.

The answer denies the plaintiff's claim of an estate in fee simple, and also denies that she is entitled to the possession of said premises and that he unlawfully withholds possession from the plaintiff; and denies that the plaintiff has sustained any damages whatever.

Furthermore, the defendant alleges that the real estate above described was on the 18th day of May, 1915, sold by the county treasurer of Milwaukee county, Wisconsin, for the nonpayment of the taxes which were duly assessed and levied upon and against said premises for the year 1914 by the proper authorities, for the sum of $137, to one Charles L. Borst, to whom certificates of sale were duly issued as provided by law; that the said Borst thereafter, for value, duly assigned such certificates to the defendant; that the owners or claimants of said lands did not redeem the same from such sale, and that upon due proceedings had in that behalf the county clerk of Milwaukee county did, on July 31, 1918, upon surrender of said tax certificates, duly make, issue, and deliver to the defendant a tax deed in the manner and form as provided by law, by virtue of which said real estate was assigned, transferred, and conveyed to the defendant, his heirs and assigns; that said deed was duly

recorded in the office of the register of deeds of Milwaukee county, Wisconsin, on August 1, 1918, in volume 546 of Deeds, on page 525; that thereby the defendant became and now is the owner and holder of the title in fee to said premises. The defendant thereupon demands the dismissal of plaintiff's complaint, with costs. The action was commenced on September 27, 1919.

There is practically no dispute as to the facts in the case. The circuit court found that the plaintiff was the owner in fee simple of the real estate in question prior to the issuance of a tax deed, but that she had subsequently been divested of her title by virtue of the tax deed. The lower court thereupon entered judgment in accordance with such findings.

The sole question in the case is whether the tax deed was or was not a valid deed.

Plaintiff sets forth eleven specific claims on the basis of which she maintains that the tax deed is invalid. It will be necessary to consider but a few of these claims so set forth. Among other things it is claimed that said tax deed is invalid:

First. Because the county treasurer did not post the notice and statement required by sec. 1130, Stats., or any notice of similar force or effect.

Second. Because there is no proof of the posting of the notice and statement of the tax sale as required by sec. 1130, Stats.

*Adolph Kanneberg* and *K. K. Kennan,* both of Milwaukee, for the appellant.

For the respondent there was a brief by *Roehr & Steinmetz* of Milwaukee, and oral argument by *Julius E. Roehr.*

DOERFLER, J. Sec. 1130, Stats., among other things, provides as follows:

"The county treasurer shall, on the fourth Monday of April in each year, make out a statement of all lands upon

which the taxes have been returned as delinquent and which
then remain unpaid, . . . containing a brief description
thereof, with an accompanying notice stating that so much of
each tract or parcel of land described in said statement as
may be necessary therefor will, on the second Tuesday in
June next thereafter and the next succeeding days, be sold
by him at public auction at some public place, naming the
same, at the seat of justice of the county, for the payment
of taxes, interest and charges thereon; . . . and cause such
statement and notice to be published in a newspaper printed
in his county . . . once in each week for four successive
weeks prior to said second Tuesday in June; and such treas-
urer shall also, at least four weeks previous to said day,
cause to be posted up copies of said statement and notice in
at least four public places in such county, one of which copies
shall be posted up in some conspicuous place in his office;
. . ."

Sec. 1132, Stats., provides:

"Every printer who shall publish such statement and no-
tice shall, immediately after the last publication thereof,
transmit to the treasurer of the proper county an affidavit
of such publication made by some person to whom the fact
of publication shall be known; . . . and the county treas-
urer shall also make or cause to be made an affidavit or
affidavits of the posting of such statement and notice as
above required, which affidavits, together with the affidavit
of publication, shall be carefully preserved by him and de-
posited as hereinafter specified."

The foregoing are general statutes, applicable to all coun-
ties in the state.

In the year 1913 the legislature enacted sec. 1131a, which
provides as follows:

"Section 1131a. In all counties containing a city of the
first class the statement and description, provided for in
section 1130 of the statutes, of lands upon which taxes have
been returned as delinquent, shall not be published as pro-
vided in sections 1130 and 1131 of the statutes, but it shall
be sufficient in such counties to publish a notice, once in each
week for four successive weeks, in three daily newspapers

published in the English, German and Polish language stating that all tracts or parcels of land upon which the taxes remain unpaid will be sold at a time and place specified in such notice, which time and place shall be the same as is provided in section 1130 of the statutes."

Sec. 1131a relates solely to the publication of the notice as therein provided. Nothing is provided in said section with respect to the posting of the notice, and it also appears that while sec. 1130 expressly provides for a publication of the statement and notice referred to in said section, sec. 1131a attempts to amend said sec. 1130 by requiring a publication once in each week for four successive weeks in three daily papers published in the English, German, and Polish language.

There is no suggestion in sec. 1131a which dispenses with the posting of the notice as is provided for in sec. 1130.

The county treasurer did not post the notice and statement required by sec. 1130, Stats.

The question therefore arises whether sec. 1131a contemplates that the posting of the statement and notice shall be dispensed with. Now, in view of the fact that sec. 1130 provides both for a publication of the notice and statement therein referred to, and also for the posting of the statement and notice referred to therein, and that sec. 1131a was enacted as an additional section to the Statutes, and simply provides for a change in the publication of the notice, but does not in any way amend sec. 1130 with respect to the posting of the statement and notice therein required, a failure to post such notice and such statement constitutes a fatal omission on the part of the county treasurer. If it was contemplated by sec. 1130 that a publication in a newspaper would comply with all of the requirements of the statute, it would have been superfluous to say anything at all with respect to the posting of the statement and notice. The publication and posting are treated as totally separate and distinct matters by the statute. They are separate and dis-

tinct means of giving notice to the public of delinquent and unpaid taxes, the object and purpose being to give the widest possible publication by both methods set forth in sec. 1130, Stats.

We are therefore of the opinion that in order to comply with sec. 1130, Stats., the notice and statement must be published and the notice and statement required in said section posted.

It is said in the case of *Jarvis v. Silliman,* 21 Wis. 599, 601:

"If a copy of the notice was not posted up in the treasurer's office, does the failure to comply with the law in that respect render the deed invalid? The giving notice of a tax sale in the time and manner prescribed by law is generally a prerequisite to the validity of a tax title. The officer derives his power of sale in part from the notice, and in this respect his sale differs from the sale of land by a sheriff on execution. Any neglect of the officer selling land for the nonpayment of taxes, which deprives the owner and bidders of the full information the law intended to give them, renders the sale invalid. Blackwell, Tax Titles, 253, 254."

Furthermore, the word "post" as used in sec. 1130 has a meaning distinct from what is implied by the term "publication." It means to "attach to a post, a wall, or other place of affixing public notices." Webster, Internat. Dict. Also, "to bring to the notice or attention of the public by affixing to a post, or putting up in some public place." Standard Dict. See, also, *Allen v. Allen,* 114 Wis. 615, 623, 91 N. W. 218.

The second point made by plaintiff's counsel refers to there being no proof of the posting of the notice or statement of the tax sale as required by sec. 1130.

It appearing from the testimony that there was, as a matter of fact, no posting of the notice or of the statement as required by sec. 1130, there was therefore no proof by affidavit of such posting. And not only is it necessary to

post a notice and statement in the office of the county treasurer, but the statute requires that they shall be posted in some conspicuous place in his office; and where the affidavit, instead of complying with the provisions of the statute in that regard, simply states that a copy was posted at the office of the county treasurer instead of "in some conspicuous place" in his office, it was held that this defect was fatal to the validity of a tax deed.

It is said in *Hilgers v. Quinney,* 51 Wis. 62, 71, 8 N. W. 17, where the affidavit merely recited that the notice and statement were posted in the office of the county treasurer:

"This is a clear noncompliance with the statute, too apparent and substantial to require further consideration than mere mention. These defects are fatal to the validity of the tax deed."

Sec. 1131*a,* it is contended by the plaintiff, is unconstitutional as violating the provisions of sec. 23, art. IV, of the constitution of Wisconsin, which reads as follows:

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

And of sec. 31, art. IV, which provides:

"The legislature is prohibited from enacting any special or private laws in the following cases: . . . 6th. For assessment or collection of taxes or for extending the time for the collection thereof."

There is only one county in Wisconsin which comes under the provisions of sec. 1131*a,* and that is Milwaukee county.

Legislation of the character of sec. 1131*a* has been frequently attacked on constitutional grounds by the contention that it violates the provisions of the constitution above set forth.

This court, in an early case, in *State ex rel. Walsh v.*

*Dousman,* 28 Wis. 541, held that wherever uniformity is practicable it must be preserved.

In *State ex rel. Merrimac v. Hazelwood,* 158 Wis. 405, 149 N. W. 141, which involved the constitutionality of ch. 586, Laws 1913, providing for the construction of a certain bridge and requiring two counties to levy and collect certain fixed amounts of taxes for that purpose, it was held:

"The attempt to provide for the construction of this bridge in an entirely different way from that provided in the general system must be held to violate the requirement of uniformity, inasmuch as it does not appear that it is impracticable to build the same under the general system."

It is contended by the defendant that it is impracticable for the county treasurer of Milwaukee county to publish the list of different lands in the notice of tax sale. The reason for the enactment of sec. 1131a is set forth in the testimony of Mr. Smith, the chief clerk in the county treasurer's office at Milwaukee, as follows:

"It was largely passed to eliminate from the county treasurer's office that service which did not seem to interest anybody excepting a few tax buyers, and that the time was too short in which to advertise a description of all of the delinquent pieces of real estate. . . ."

It needs but little reflection to realize the object to be accomplished by the publication of the statement referred to in sec. 1130, Stats., and of the posting of the notices as therein required. Such statement and notice, when published in Milwaukee county, and when posted as required by sec. 1130, constitute as great an advantage to people living in Milwaukee county as it does to those living in other counties in the state, and there is no logical reason that can be advanced for making any distinction whatsoever. The distinction might as well have been based upon the subject of religion, race, or politics.

"The classification must be based on substantial and real differences in the classes, which are germane to the purpose

of the law and reasonably suggest the propriety of substantially different legislation." *Bingham v. Milwaukee Co.* 127 Wis. 344, 347, 106 N. W. 1071. See, also, *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954.

It is plain that the provisions of sec. 1130, Stats., are designed to give all persons who are owners of lands or an interest therein the fullest opportunity of protecting themselves by information, so as to prevent a forfeiture or loss of their lands. If it is an advantage to owners of lands outside of Milwaukee county to obtain this information, then it is a decided disadvantage to owners of lands in Milwaukee county not to receive such information.

Sec. 1131*a* also violates the provisions of sec. 31, art. IV, of the constitution.

It has been held in *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80, 88, 70 N. W. 77, that, referring to the restrictions against special legislation for assessment or collection of taxes, it embraces all the proceedings for raising money by the exercise of the power of taxation, from the inception of the proceedings to its conclusion, and took from the legislature all jurisdiction, past, present, and future, of special legislation on the subject.

The principal object of the constitutional provisions above referred to is to prohibit special legislation, and the language used in the opinion in *Hetland v. Norman Co.* 89 Minn. 492, 495, 95 N. W. 305, 306, is apt and applicable to the situation:

"To approve [of such legislation] would [be to] open the door to all sorts of special legislation, general in form but special in fact, the only limitation to which would be the ingenuity of legislators in devising new classifications."

It will not be necessary, for the reasons above stated, to consider plaintiff's other objections to the validity of the tax deed in question.

The defendant contends that a deposit should have been

made by the plaintiff in accordance with the provisions of secs. 1210*h* and 1210*h*—1, Stats., as a prerequisite to the maintaining of her action.

The action that forms the basis of this suit is not one of those actions contemplated by the sections of the statutes last above referred to. It is not an action to set aside a sale or to cancel the tax certificate or to restrain the issuing of any tax deed, but is an action in ejectment to recover the possession of land, which is controlled by sec. 3087, entitled "Recovery where tax title defective."

In the case of *Van Ostrand v. Cole,* 131 Wis. 446, 451, 110 N. W. 891, which was an action of ejectment, the court specifically in its decision decides defendant's contention adversely to him. In that decision it is held:

"It is further contended that plaintiff could not maintain this action unless before action he tendered defendant the full amount of all taxes, interest, and charges arising out of the sale of the premises for the nonpayment of taxes involved in the proceedings on which her tax titles are based. The argument that the failure to so tender payment of these sums would be a deprivation of defendant's right to the sum so paid for taxes, interest, and charges, on account of the owner's delinquency, and would thus deprive her of the interest acquired in the lands by such payments, is without merit, in view of the provisions of the statute providing that such purchasers shall be reimbursed the sums paid for tax certificates held by them, if the title fails on account of defects or deficiencies in the tax proceedings. Sec. 3087, Stats. 1898, makes provision for the repayment of the amounts paid for taxes, interest, and charges by holders of certificates on the land of such delinquent owner in case he establishes the right to hold the premises against the claims of such purchasers of tax certificates."

We therefore hold that defendant's tax deed is invalid for the reasons stated, and that sec. 1131*a*, Stats., is unconstitutional and in violation of the provisions of secs. 23 and 31 of art. IV of the constitution of the state.

The lower court must compute the amount for which the real estate in question was sold and the costs of executing and recording the tax deed in question and the amount paid by the defendant for taxes assessed upon such premises subsequent to said sale, with interest on all such sums at the rate of fifteen per cent. per annum from the time so paid until the date of the order herein referred to, pursuant to sec. 3087, Stats., and such lower court shall thereupon enter an order that the amount so computed shall be set off against the damages awarded to the plaintiff, namely, the sum of six cents; and as to the excess, that said order provide, that the plaintiff, as a condition of judgment, shall pay the same, with interest from the date of such order, within ninety days; and that in default thereof the judgment of the lower court be affirmed; that upon compliance with said order upon the terms and within the time therein specified, judgment be entered in favor of the plaintiff against the defendant in accordance with this opinion.

*By the Court.*—It is so ordered.