HILES, Appellant, vs. CATE and another, Respondents.

*October 21 — November 5, 1889.*

TAX TITLES: APPEAL. *(1) Assignment of tax certificate by county: Conclusiveness of record: Limitation on issue of tax deed. (2) Lack of proof of publication of notice of tax sale: Presumption from tax deed: What parol evidence must show. (3) Bill of exceptions: Reversal of judgment.*

1. The record made by the proper officers of the assignment of a tax certificate by the county at a certain time, is conclusive of the fact that the ownership of the certificate passed from the county at that time; and a tax deed issued upon such certificate more than six years thereafter is void under sec. 1182, R. S., notwithstanding any ownership of the certificate acquired by the county subsequent to such assignment.

2. The presumption arising from a tax deed that all the tax proceedings previous thereto were regular (sec. 1176, R. S.), is rebutted by evidence that the county clerk is unable to find in his office any

proofs of publication or posting of the notices of the tax sale. And to sustain the deed, in such case, the parol evidence must show that the proper affidavits of such publication and posting were in fact filed, and that they stated the facts required by law to be stated therein. General statements of a witness, who was the county treasurer at the time of the tax sale, that affidavits were filed and that they fulfilled the requirements of the law, are insufficient.

3. The point that the bill of exceptions in this case is not certified to contain all the evidence not having been made until the oral argument, and the evidence in regard to the tax deed which is the sole basis of the respondents' title being apparently fully stated, it is *held* that the objection to the record should not prevent a reversal of the judgment.

APPEAL from the Circuit Court for *Waupaca* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is an action of ejectment to recover the possession of eighty acres of land in section 1, township 22, range 14 E., described in the complaint. The complaint is in the usual form. The answer alleges that the defendant *G. W. Cate* is the owner in fee of said lands, and that the defendant *T. A. Ketchum* is in possession as lessee of said *Cate*, and denies all the other allegations of the complaint. The case was tried by the court without a jury.

On the trial in the circuit court the plaintiff introduced evidence showing that one Merrit Reynolds entered said land at the government land office at Menasha, in this state, in 1853. He also introduced a deed from Merrit Reynolds to John C. Hoxie, dated February 12, 1885, and a deed from John C. Hoxie and wife to the plaintiff, dated October 14, 1887. Plaintiff also offered in evidence a deed from the sheriff of Waupaca county to the plaintiff, dated October 26, 1887; also the record of a mortgage given by one Henry Ketchum on the same land, April 3, 1869, and recorded April 20, 1869. The record of this mortgage shows that it was given by Ketchum to secure a part of the

purchase money of said lands which had been that day conveyed by Reynolds and wife to said Ketchum. Plaintiff also offered in evidence a sheriff's deed of said lands to Merrit Reynolds, dated February 24, 1884, recorded February 29, 1884. On the trial the court found that the defendant *Cate* was the owner in fee of said lands, and was entitled to the possession thereof by his lessee, *Ketchum.* To this finding the plaintiff duly excepted, and upon this appeal he alleges that such finding is wholly unsupported by the evidence, and claims that judgment should have been in his favor, upon all the evidence in the case.

*C. W. Briggs*, for the appellant.

For the respondents there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones.*

TAYLOR, J. We think the evidence introduced on the part of the plaintiff established the fact that the plaintiff had acquired the original title of the United States to the land in question, and that he was entitled to recover in the action, unless the evidence introduced by the defendants showed that the plaintiff had in some way been divested of such title.

The respondents claim by their brief, and by their oral argument upon the hearing of this appeal, that the defendant *Cate* claims title to the lands in question under a tax deed duly recorded on the 5th day of April, 1888, and that, at the commencement of this action, he was in the actual possession of said lands under such tax deed, and they make no other claim to the lands in question. The record shows that the tax deed, introduced in evidence by the defendants, was issued upon a tax sale made on the 8th day of May, 1877. The evidence further shows that the tax certificates issued upon such sale of 1877 were, on the 28th day of December, 1887, assigned by the county treasurer to one

Mary E. Smith. There does not appear to have been an assignment of the certificate by Mary E. Smith to *Cate*, the grantee in the tax deed.

It is claimed by the counsel for the appellant that this tax deed is void for several reasons: (1) Because it was issued upon tax certificates more than six years after the date of such certificates, and the records in , the county treasurer's office show that it was not sold to the county, nor owned by the county, at any time within six years previous to the date of the tax deed; (2) that the evidence shows that there were no affidavits of the advertising of the tax sale, or posting notices of such sale, filed in the county clerk's office as required by secs. 1132, 1141, R. S. 1878. Other objections were made to the validity of such tax deed which we do not deem necessary to consider on this appeal.

Sec. 1182, R. S., reads as follows: " From and after six years from the day of sale of any lands or lots heretofore or hereafter sold for the nonpayment of taxes by any officer of any county, city, or village, no deed shall be issued on the certificate or certificates issued on such sale, and no action shall be commenced thereon; but such limitation shall not apply to certificates issued to and owned by counties or municipal corporations, or to their assigns, until the expiration of six years from the date of the assignment of such certificate by such county or municipal corporation." Upon the part of the respondent it is claimed that these certificates were issued to and owned by the county until they were assigned to Mary E. Smith, December 28, 1887. On the part of the plaintiff it is claimed that the lands upon which the certificates were issued were, at the tax sale in May, 1877, sold to one Ira Millard, and not to the county; and, if the certificates were in fact issued to the county, they were, shortly after such sale, assigned by the county

treasurer to said Ira Millard, the person to whom the rec-
ord shows they were sold. The evidence on this question
is as follows:

The county treasurer, who was such in 1887 as well as on
the day of trial, was called as a witness by the plaintiff, and
he testified as follows: "I have the records of the county
treasurer's office in my possession. Have the sales-book for
the year 1877. This is the book. *Question.* You can turn to
the sale of the S. W. of N. E. of 1 — 22 — 14, certificate 2,128.
What entry is made there in relation to the sale of that cer-
tificate? *Answer.* There is N. W. of S. E. of 1 — 22 — 14,
sold to Ira Millard. It was sold December 5, 1877. The
same applies to certificate number 2, 129, the S. W. of N. E.,
the same year assigned to him. *Q.* What is the heading
in your book over Mr. Millard's name? *A.* 'To Whom
Sold.' The next heading is, 'Description of Land;' the
next, 'Section, Town, and Range;' the next, 'Amount of
Taxes;' the next is, 'The Date of the Assignment.' "

If this record is to control as to the running of the stat-
ute, then more than six years had elapsed after the certifi-
cate had been assigned by the county to Mr. Millard. The
truth probably is as claimed by the counsel for the defend-
ants. The certificates were in fact issued to the county as
though the county had been the purchaser, although the
sales-book shows the sale made to Ira Millard, and the cer-
tificates were in fact, in December, 1877, assigned to him,
with the supposition that he would pay for them and take
them from the county; and, notwithstanding the testimony
of Mr. Millard given on the trial, we think he never paid
for the certificates or took them from the treasury, and
that they remained in the treasury until 1887, when they
were assigned by the treasurer to Mary E. Smith. Whether
the county claimed to own the certificates during all this
time is put in some doubt from the fact that in 1882 one
Henry Ketchum purchased other certificates held by the

county on these same tracts of land issued to the county on subsequent sales. Under sec. 1192, R. S. 1878, the county treasurer had no right to assign these subsequent certificates, unless the purchaser took all the certificates then held by the county on such lands. It is urged by the counsel for the plaintiffs that the fact that these certificates were not sold to Ketchum in 1882, when the other certificates held by the county on such lands were sold to him, is strong evidence that the county did not at that time claim to own them, but treated them as belonging to said Millard. However that may be, it appears quite clearly that the certificates remained in the treasury until 1887; when they were assigned by the county treasurer to Mary E. Smith.

It is claimed by the learned counsel for the plaintiff that as the record of the sales made by the county treasurer shows that these lands were sold to Ira Millard in 1877 at the tax sale, and that, although the certificates issued upon such sale to Millard were in fact issued to the county, as the books also show that in December, 1877, such certificates were assigned to said Millard, the record of the transaction made by the county officers, and to which the public are to look for information as to what was in fact done, clearly establishes the fact that after December 5, 1877, the county had parted with all interest it had in such certificates (if it ever had any), and that the six-years statute, above cited, had therefore barred the right of the plaintiff to take a tax deed upon such certificates.

The record made by the county officers in regard to these certificates, we think, is conclusive as to the ownership of the certificates after December 5, 1877, and shows conclusively that on that day the title to the same passed out of the county to Mr. Millard for the purpose of setting the six-years limitation running. The record showing conclusively that the county had parted with its title to the certificates in December, 1877, any ownership of such certifi-

cates acquired by the county after that date would not prevent the bar of said six-years limitation. By the terms of the statute, in order to take the certificates out of the six-years limitation, they must have been "issued to and owned by the county." Even though the certificates may have in fact been issued to the county upon a purchase made by it, yet, if the county ever sells and assigns such certificates, they are taken out of the exception in the statute, and a re-assignment to the county would not restore the certificates to their original *status*.

Whether the entries made in the records of the county, which show a sale and assignment of these certificates to Mr. Millard more than six years before the tax deed was issued thereon, would be an estoppel in favor of a person purchasing such lands after the six years had run against the certificates, if such person purchased with full knowledge that such entries in the county records were made by mistake, and that the truth was that such certificates were in fact issued to the county and were owned by it, need not be decided in this case, as there is no evidence tending to show such fact. The undisputed evidence in this case shows that the plaintiff purchased the lands in question more than six years after the certificates had been assigned to Mr. Millard, as stated in the county records, and without knowledge that there had been any mistake made in such record. Upon this state of the evidence we think the defendant's tax deed was void, because it was issued upon tax certificates more than six years after the sale and assignment of them by the county.

We also hold that there was not in this case any sufficient evidence of the publishing of the notice of the tax sale in 1877, or of posting the notices of such sale, as required by the statute. See secs. 1130, 1132, 1141, R. S. 1878. Sec. 1130 requires the county treasurer to cause certain notices of the tax sale to be published in a newspaper, and also

other notices to be posted up in four public places in the county, a certain length of time before the tax sale. Sec. 1132 requires the printer to make an affidavit of the fact that he has published such notice, and transmit such proof of publication to the county treasurer within six days after the last publication; and it also requires the county treasurer to make an affidavit or affidavits of the posting of such notices, and carefully preserve the same, and deposit them as prescribed in sec. 1141, R. S. 1878. Sec. 1141 reads as follows: "Every county treasurer shall, immediately after the close of the sale of any lands for taxes, deposit in the office of the county clerk all affidavits, notices, and papers in relation to such tax sale, to be filed and preserved therein; also a statement containing a particular description of each tract, or parcel thereof, of land so sold by him, specifying the name of the person to whom sold, the amount for which the same was sold, and the name of the owner, if known; and the said treasurer and clerk shall each record such statement in their respective offices." The statute makes the tax deed *prima facie* evidence of the regularity of all the proceedings previous to and including the execution of the deed. See sec. 1176, R. S.

On the trial in this case, the plaintiff proved by the present county clerk and the deputy county clerk that they had searched the office of the county clerk, and were unable to find any proofs of publication or proof of posting the notices of the tax sale of 1877. This proof rebutted the presumption of fact which the production of a tax deed in due form raised in favor of the regularity of the tax proceedings, as to the publication and posting of the notices of such sale, and made it incumbent on the person claiming under the tax deed to show that such proofs of publication, and of the posting of the notices of the tax sale, were in fact made as required by the statute. See *Jarvis v. Silliman*, 21 Wis. 599. After the proofs were made, showing that no affida-

vits of the publication of the tax sale, or the posting of the notices, were to be found in the clerk's office, the defendants introduced the person as a witness who was the county treasurer in 1877, and attempted to prove by him that such affidavits of posting and publication had been filed with the county clerk shortly after the tax sale in 1877, and it is insisted that this proof was sufficient to show that such publication and posting of the notices of the sale of 1877 were made in conformity to law.

We think it very clear that the parol evidence, in order to sustain the tax deed, in the absence of the affidavits required by law to prove such publication and posting of notices, must show that such affidavits did, upon their faces, state the facts required by the statute, and show that such notices were published and posted as required by law. It was correctly held by the court in *Iverslie v. Spaulding*, 32 Wis. 394, 396, that the fact that such publication and posting was made could not be proved by parol on the trial of the action. In that case the chief justice said: "We are inclined to think that the evidence offered was properly excluded. The law made it the duty of the county treasurer to make an affidavit of the posting of such statement and notice, which, together with the affidavit of the publication, was to be carefully preserved by him, and immediately after the close of the sale deposited in the office of the clerk of the board of supervisors of the county. These were to be filed and preserved by the clerk in his office, and they were made *prima facie* evidence of the facts therein stated in all judicial proceedings. Now, the object of these provisions, in thus requiring these affidavits to be filed and preserved in the office of the clerk, doubtless was to enable all persons interested in the matter to ascertain from them whether the law in regard to the posting and publication of notice of sale had been complied with. It was to perpetuate this evidence, and was intended

to be for the common benefit of the purchaser and former owner. These affidavits were to remain on file and take the place of a record which might be examined by any one to see what the proof was upon these points; and if this was the object of the statute in requiring these affidavits to be filed and preserved, then it is very clear that parol evidence would be inadmissible to cure defects in them, or aid them by showing that notices were actually posted according to law."

I have quoted this, not for the purpose of showing that it was incompetent to prove by parol evidence the contents of the affidavits of the publication and posting of such tax-notices, when it is shown that such affidavits were in fact made and deposited as required by the statute, but were lost, and could not be found on the trial, but for the purpose of showing that the parol evidence in this case wholly failed to show that the affidavits claimed to have been made in 1877 stated the facts required by law to be stated therein. The record shows that the witness, who was the treasurer in 1877, testified upon that point as follows: " *Question.* State whether any proof was made of that sale, and filed in the office by you as county treasurer." This question was objected to, and the court permitted the witness to answer. He answered, " There was." The witness was then asked whether the proof required by law was made and filed. The answer was, " They were." He also testified that he knew they were in the clerk's office during his term of office. On cross-examination, the witness testified that he " did not know the date when he made these reports of the certificates of notice and posting of the notice for the sale of 1877;" that he " did not know the date he filed it." He said he was " confident they contained all the requirements of the law." To the following question, viz.: " Can you state from your memory what it contained?" he answered: " I cannot just say what it con-

tained. I followed the form. *Question.* Can you state where the notices were posted? *Answer.* I can state as to two of them positively. *Q.* Can you state as to the other two? *A.* I cannot, for that year." It seems to be clear, from this testimony, that there was in fact no evidence given as to the contents of the affidavits of the publication or posting notices which the witness claimed were filed in the county clerk's office in regard to the sale of 1877. His general statements, that proofs were made and that proofs were filed as required by law, fail entirely to show what facts were stated in such affidavits, and furnish no basis upon which the court or a jury could find, as a question of fact, that such affidavits showed that the publication was made or the notices were posted according to law. The law requires that the affidavit of the posting must show that such notices were posted in four public places in the county, one of which shall be posted in some conspicuous place in his office. Nothing of this kind is made to appear from the evidence in this case. When the witness says the proofs required by law were made and filed, he testifies to his conclusion as to the contents of the affidavits of proofs, and not as to the contents of the affidavits themselves. He also says he "followed the form." In this he also testifies to a conclusion. It does not appear what form he followed; *non constat* that the form he followed was the form required by the law. As this court has decided that, when it is necessary to show that the proofs of publication and posting notices were made, such proofs must be in writing, and if the writing is defective it cannot be helped out by parol evidence, it is apparent that the evidence in this case wholly failed to show that the proper affidavits were in fact made. The rule is well established that, when the burden of proof falls upon the tax-title claimant, he must show a strict performance of the requirements of the law in order to sustain his deed. *Potts v.*

Hiles vs. Cate and another.

*Cooley,* 51 Wis. 353; *Hilgers v. Quinney,* 51 Wis. 62. These cases illustrate the strictness which is required by the statute in making the proofs of such publication and posting notices.

If the evidence introduced in this case on the part of the defendants is sufficient to sustain the tax deed, in the absence of the record of the proofs required by statute, it would be in the interest of all tax-title claimants to see that the record was removed from the proper office, so as to let in parol evidence of such record. It is undoubtedly true that the existence of a record may be proved by parol when such record has been once made and is lost or destroyed; but in such case the proof must first show that there was a record, and its loss or destruction, and, if the contents of such lost record are material to sustain the rights of the party attempting to prove the same, the parol evidence must show what such contents were.

We think the tax deed was void for the want of any proof of a compliance with the law in making proof of the publication and posting required by law.

A very voluminous record of another action, between other parties, was injected into this case, for what purpose is not clearly stated in the record, and we were not informed on the argument of its pertinence in this action. If it had any bearing upon the rights of the parties to this action, we think it was the duty of the attorneys for the defendants to clearly point out what parts of such record were pertinent, and not leave it to this court to search it out by a perusal of its entire contents.

The question whether, after one person, who is, at the time, owner of a tax certificate, gives the statutory notice required to entitle him to a tax deed, such deed can issue to a third person simply upon producing such certificate to the county clerk, with the proofs of the service of such notice, is not determined in this case.

It was said on the argument of this case by the learned counsel for the respondents that the certificate of the judge to the bill of exceptions in this case does not show that it contains all the evidence. No such point was made in the printed brief; and as, by such brief, they claim that the title of the defendants to the land in question was based solely on the tax deed offered in evidence, and the evidence in regard to such tax deed being apparently fully stated in the bill of exceptions, we think the objection to the record should not aid the respondents. Had the objection been made in time, the appellant could undoubtedly have had the same corrected by procuring the proper certificate.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to that court to render judgment in favor of the plaintiff.