ALLEN and others, Appellants, vs. ALLEN and others, Respondents.

*May 13—June 19, 1902.*

(1–3) *Tax titles: Filing proof of publication of notice of sale: Post-ing of notices.   (5) Depositing statement with county clerk: Mandatory or directory statutes.   (6, 7) Collection of real es-tate taxes from personalty: Treasurer's return conclusive. (8, 9) Tenants in common: Purchase of tax title by one. (4) Appeal: Findings: Exceptions.*

1. Under sec. 1132, Stats. 1898 (providing that the affidavit of pub-lication of the delinquent list and notice of sale shall be trans-mitted to the county treasurer immediately after the last pub-lication, and if not so transmitted within six days the printer shall not be paid for the publication), a failure to file the affi-davit until ten days after the last publication did not invalidate the sale.
2. Affidavits showing the posting of a notice of tax sale "at" four public places in the county, sufficiently show a posting "in" such places, as required by sec. 1130, Stats. 1898.

3. The posting of a notice of tax sale at "the inside door" of the county treasurer's office will be presumed to be a posting in a "conspicuous place" in such office, within the meaning of sec. 1130, Stats. 1898.

4. A finding of fact not excepted to cannot be reviewed on appeal.

5. Sec. 1141, Stats. 1898, providing that the county treasurer shall, immediately after the tax sale, deposit in the office of the county clerk a statement containing a description of each parcel sold, specifying the name of the purchaser, the amount, and the name of the owner, etc., is directory, not mandatory, and a failure to comply therewith does not invalidate the tax deed. *Pier v. Oneida Co.* 93 Wis. 463, limited. BARDEEN, J., dissents.

6. Taxes upon real estate must, if possible, be collected from the personal property of the owner or occupant.

7. The verified return of a town treasurer, made under sec. 1114, Stats. 1898, stating that he was unable to find any personal property out of which to collect the tax upon real estate, is conclusive upon that question, so far as the validity of the tax sale is concerned.

8. One of several tenants in common, all of whom derive their title as heirs of their father, cannot acquire an outstanding tax title and assert it against his cotenants, even though he was not in possession of the land or under obligation to pay the taxes for which it was sold.

9. In such a case one of the tenants in common, not himself in possession of the land, purchased an outstanding tax title, and afterwards conveyed one half of the property to a cotenant in possession who should have paid the taxes for which the land was sold. It did not appear that the purchase was made collusively for the benefit of the latter. *Held* that, to entitle the other tenants to have the tax title held for the common benefit of all, they should be required to pay their proportionate shares of the amount paid therefor, not merely of the amount necessary to redeem from the tax.

APPEAL from a judgment of the circuit court for Vernon county: O. B. WYMAN, Circuit Judge. *Reversed.*

This is an action in equity to set aside a tax title upon eighty acres of land upon the ground of various irregularities in the tax proceedings, and upon the further ground that the relations of the parties were such that the purchase of the tax title by the defendant *C. W. Allen* constituted in law a pay-

ment of the tax. The plaintiffs are five in number, and are children and heirs at law of one Thomas W. Allen, who died intestate, March 1, 1880, seised of the land in question, and whose estate has never been administered. The defendants *Charles W.* and *Adelbert Allen* are the remaining children and heirs at law of Thomas W. Allen, and the defendants *Maria Mixner* and *Louisa Wernick* are subsequent mortgagees of the land. The action was tried by the court, and the facts were not seriously in dispute, and were substantially as follows:

After the death of Thomas W. Allen, in 1880, his widow, Susan Allen, and all of the children continued to occupy the land until the spring of 1892, when all of the children except the plaintiff *Whit Allen* and the defendant *Adelbert Allen* left home, and thereafter did not live upon the premises. The widow, with the plaintiff *Whit* and the defendant *Adelbert,* however, continued to occupy the premises as actual tenants during the season of 1892, using them for agricultural purposes, under an arrangement to share the products equally. The taxes on the land for the year 1892 were not paid, and in the spring of 1893 the land was sold therefor to one Albert Field. The land was assessed upon the tax roll in the name of the widow, Susan Allen. On the 15th of November, 1898, Albert Field received a tax deed of the lands upon his certificate, which deed was recorded on the same day, and on the 22d of November, 1898, he deeded the premises to the defendant *Charles W. Allen.* Upon the same day the widow and the defendant *Adelbert* made a quitclaim deed of the same premises to the said *Charles W. Allen,* who immediately, and on the same day, conveyed the south half thereof to the defendant *Adelbert.* On the same day, *Charles* mortgaged the north half, and *Adelbert* mortgaged the south half, thereof, to the defendant *Maria Mixner,* and upon the 1st day of May, 1899, *Adelbert* made another mortgage upon the south half to the defendant *Louisa Wer-*

*nick.* The defendants *Charles* and *Adelbert* claim title to said lands under said tax deeds, exclusive of the other heirs. The alleged irregularities in the tax proceedings are fully stated in the opinion.

The court held that the tax deed was valid, and that *Charles W. Allen* acquired a good title to said lands by the deed from Field, whereupon the court dismissed the complaint, and the plaintiffs appeal.

For the appellants there was a brief by *Butt & Butt,* and oral argument by *H. P. Proctor.* They contended, *inter alia,* that heirs or tenants in common are equally bound to pay the taxes on the common property, and one of the heirs or tenants in common, claiming title, cannot acquire a tax title based on taxes against the property. *Bassett v. Welch,* 22 Wis. 175; *Jones v. Davis,* 24 Wis. 229; *Whitney v. Gunderson,* 31 Wis. 359; *Link v. Doerfer,* 42 Wis. 391; *Smith v. Lewis,* 20 Wis. 350; *Burchard v. Roberts,* 70 Wis. 111–118. This is so, even though such title be acquired through an innocent third party, for one cannot do indirectly what he cannot do directly. And a purchase thus made by one of the tenants in common enures to the benefit of all. *Wright v. Sperry,* 21 Wis. 331; *Swift v. Agnes,* 33 Wis. 229; *Goralski v. Kostuski,* 179 Ill. 177, 53 N. E. 720; *Du Bois v. Campau,* 24 Mich. 360; *Van Horn v. Fonda,* 5 John. Ch. 406; *Parker v. Brast,* 45 W. Va. 399, 32 S. E. 269; *Falkner v. Thurmond* (Miss.) 23 So. 584; *McChesney v. White,* 140 Ill. 330, 29 N. E. 709; *Dray v. Dray,* 21 Oreg. 59, 27 Pac. 223; *Burhans v. Van Zant,* 7 N. Y. 523; *Rothwell v. Dewes,* 3 Black (L. ed.) 613; *Hodgson v. Fowler,* 24 Colo. 278, 50 Pac. 1034; *Lomax v. Gindele,* 117 Ill. 527, 7 N. E. 483; *Boyd v. Boyd,* 176 Ill. 40, 51 N. E. 782; *Hurley v. Hurley,* 148 Mass. 444, 19 N. E. 545. A failure to sell the personal property before resorting to a sale of the realty for nonpayment of taxes, when required by statute, is held by the weight of authority to be sufficient to set aside a tax deed issued on such sale

of realty. *Kean v. Kinnear,* 171 Pa. St. 639, 33 Atl. 325;
25 Am. & Eng. Ency. of Law (1st ed.) 370; *St. Clair v.
McClure,* 111 Ind. 467, 12 N. E. 134; *Kittle v. Shervin,*
11 Neb. 65, 7 N. W. 861; *State ex rel. McKenzie v. Casteel,*
110 Ind. 174, 11 N. E. 219; *Helms v. Wagner,* 102 Ind. 385,
1 N. E. 730; *Wartensleben v. Haithcock,* 80 Ala. 565, 1 So.
38; *Sims v. Greer,* 83 Ala. 263, 3 So. 423; *Julian v.
Stephens,* 10 Ky. L. Rep. 862, 11 S. W. 6; *Simpson v.
Meyers,* 197 Pa. St. 522, 47 Atl. 868; *Wheeler v. Bramel,*
10 Ky. L. Rep. 301, 8 S. W. 199; *Interstate B. & L. Asso. v.
Waters,* 50 S. C. 459, 27 S. E. 948; *Phil. Nat. Bank & S. Co.
v. Security Co.* 14 Montg. Co. Law Rep. 106; Blackwell, Tax
Titles (1st ed.) 209–211, 294. It is the policy of the law to
take land by tax deed only when other remedies fail. Black-
well, Tax Titles (1st ed.) 210; *Id.* (5th ed.) § 341. The re-
turn of the town treasurer, to the effect that there was no per-
sonal property upon which a levy and sale could be made, is
not conclusive. *Kean v. Kinnear,* 171 Pa. St. 639, 33 Atl.
325; *Wartensleben v. Haithcock,* 80 Ala. 565, 1 So. 38–42;
Blackwell, Tax Titles (1st ed.) 213.

For the respondents there was a brief by *C. W. Graves* and
*Ray B. Graves,* and oral argument by *C. W. Graves.* They
argued, among other things, that the general scheme of land
taxation in Wisconsin is not to make the tax a personal charge
against the owner, but rather that the levy is upon the land
and the land itself is liable for the tax. Sec. 1051, Stats.
1898. The tax is not a debt in the ordinary sense of that
term. *Meriwether v. Garratt,* 102 U. S. 472; *Lane Co. v.
Oregon,* 7 Wall. 71; 25 Am. & Eng. Ency. of Law, 12, and
cases in note 5; *Hanson Co. v. Gray,* 12 S. D. 124, 76 Am.
St. Rep. 591. The statute points out a clear and definite
procedure in collecting the taxes on real estate. It first
makes the tax a lien, and then proceeds to point out the man-
ner in which the state shall enforce its lien, by public sale of
the thing taxed. Undoubtedly the legislature has power to ex-

pressly authorize the collection of land tax by action, but it has never done so, and the present method is exclusive of any other method or remedy. Black, Tax Titles (2d ed.) § 150; 25 Am. & Eng. Ency. of Law, 298, and cases in note 6; *Gatling v. Comm'rs,* 92 N. C. 536, 53 Am. Rep. 432; *Comm'rs v. First Nat. Bank,* 48 Kan. 561; *Montezuma Valley W. Co. v. Bell,* 20 Colo. 175; *Camden v. Allen,* 26 N. J. Law, 398; *Detroit v. Jepp,* 52 Mich. 458; *Hibbard v. Clark,* 56 N. H. 155; *Richards v. Comm'rs,* 40 Neb. 45; *Louisville W. Co. v. Commonwealth,* 89 Ky. 244; *State v. Piazza,* 66 Miss. 426; *Hanson Co. v. Gray,* 12 S. D. 124; *State ex rel. v. Cain,* 18 Neb. 631; *Littler v. McCord,* 38 Ill. App. 147. After the tax sale had been made and the tax deed issued to Field, the defendant *Charles W. Allen's* interest in the land with his cotenants had been absolutely forfeited and no redemption for taxes could be made. At the time he acquired this title he owed these plaintiffs no more of a duty with reference to it than an entire stranger did, and the title obtained by him through the purchaser at the tax sale vests in him as complete a title as Field had. No fraud or conspiracy is proven or attempted to be proven between Field and *Charles W. Allen,* and this is the only theory upon which this title can be said to enure to the benefit of the other cotenants. 17 Am. & Eng. Ency. of Law (2d ed.) 677; *Lewis v. Robinson,* 10 Watts, 354; *Kirkpatrick v. Mathiot,* 4 Watts & S. 251; *Reinboth v. Zerbe Run Imp. Co.* 29 Pa. St. 139; *Keele v. Cunningham,* 2 Heisk. (Tenn.) 288; *Coleman v. Coleman,* 3 Dana, 398; *Watkins v. Eaton,* 30 Me. 529, 50 Am. Dec. 637.

Winslow, J. The validity of the tax deed secured by Field is attacked on several grounds, which will be briefly considered in their order.

1. The sale took place May 16, 1893; the last publication of the delinquent list and notice of sale was made May 10th;

the delinquent list and notice was duly published the required number of times, but no affidavit of publication was filed until May 20th, being four days after the sale, and ten days after the last publication. The statute (sec. 1132, Stats. 1898) provides that the printer's affidavit showing the proper publication of the list and notice shall be transmitted to the county treasurer immediately after the last publication, and further that, if the same be not transmitted within six days, the printer shall not be paid for the publication. It is argued that this requirement is mandatory and jurisdictional, and that failure to comply therewith is fatal. The fact of publication for the required time is of course jurisdictional, and it is true also that the affidavit of publication required by the statute is the exclusive proof of such publication, without the filing of which the sale will be held invalid. *Iverslie v. Spaulding,* 32 Wis. 394; *Hebard v. Ashland Co.* 55 Wis. 148, 12 N. W. 437. It has not been held, however, that if the affidavit be not filed within the six days, but be actually filed a few days thereafter, the sale is void. The penalty attached to the six-day requirement is a clear indication that its main object was to compel obedience on the part of the printer. So far as notice to the parties is concerned, every substantial right is as well conserved by the filing of the affidavit ten days after the last publication as by the filing within six days thereafter, providing it be thereafter duly deposited with the county clerk, as was the case here; and, while the rule of strict compliance with all statutory provisions regulating tax sales is well understood, we are not inclined to hold that the variance here shown should invalidate the sale.

2. It is argued that the affidavits of posting the delinquent list and notice of sale were insufficient. The statute requires (sec. 1130, Stats. 1898) that the treasurer shall, at least four weeks before the day of sale, cause to be posted up "copies of such statement and notice in at least four public places in

said county, one of which copies shall be posted up in some conspicuous place in his office;" and also requires (sec. 1132) that an affidavit or affidavits showing such posting shall be made and preserved by him and thereafter deposited with the county clerk (sec. 1141). There were several affidavits of posting duly filed. One affidavit stated that one of the notices was posted up "at the inside door of the treasurer's office," April 17, 1893; three other affidavits showed, respectively, that the notice was, on the 17th day of April, posted up "at the postoffice in the village of Hillsboro in said county," "at the postoffice on the outside of the building in the village of Westboro in said county," and "at the postoffice building in the village of Coon Valley in said county." The claim is that these affidavits do not satisfy the requirements of the statute, and the case of *Hilgers v. Quinney,* 51 Wis. 62, 8 N. W. 17, is relied on in support of the contention. In that case it was held that an affidavit which stated that the notices were posted up at four public places in the village of Chilton in said county,—"one at the Chilton House, one at the drug store of William Mahoney, one at the Washington House, and one at the office of the county treasurer,"—was insufficient, because: (1) Four public places in the village of Chilton were not necessarily four public places so far as the county was concerned; (2) because "at" is not synonymous with "in;" and (3) because it did not appear that the posting in the treasurer's office was in a "conspicuous place." It must be conceded that the decision was an extremely strict one, and we certainly do not feel that it should be extended to a case not squarely within its lines. This court has held (*Hart v. Smith,* 44 Wis. 213) that it will be presumed that postoffices in cities and villages are public places, and that posting therein constitutes posting in public places, though the affidavit does not state that they are public places. There can be no doubt, therefore, that the affidavits in the present case show posting "at" three public places in the county.

Should the "inside door" of the county treasurer's office be presumed to be a "conspicuous place" in such office? We think it should. The words should be given their natural meaning, and they naturally indicate an inner entrance door into the treasurer's office, and hence, necessarily, a conspicuous place in the office. There is only left to be considered the question whether the use of the word "at" instead of "in" is fatal. Notwithstanding what was said on this subject in the *Hilgers Case,* we do not feel that we ought to hold that this variance alone is fatal. The word "post," when used in the present connection, means "to attach to a post, a wall, or other usual place of affixing public notices" (Webst. Int. Dict.); "to bring to the notice or attention of the public by affixing to a post, or putting up in some public place" (Standard Dict.). Giving the word this meaning, it seems certain that posting "at" a public place is substantially the equivalent of posting "in" a public place, and we therefore hold that the affidavits of posting in the present case were sufficient.

3. The statute requires (sec. 1141, Stats. 1898) that the county treasurer shall, immediately after the tax sale, deposit in the office of the county clerk, with all affidavits, notices, and papers relative to the sale, "a statement containing a particular description of each tract or parcel thereof of land so sold by him, specifying the name of the person to whom sold, the amount for which the same was sold, and the name of the owner, if known," and that the treasurer and clerk shall each record such statement in their respective offices. In the present case the court found that the treasurer did not make or file this statement, but that a list of said lands so sold was kept in the county clerk's office, contained in a book called the "sales book," but not signed by the treasurer. This finding was based simply upon the evidence of the county clerk, who became such in 1899, that he had found no list made by the treasurer in 1893 in his office, though he had

made search therefor, but had found the sales book containing the list of the lands sold by the county treasurer in 1893. The sales book is the record referred to in sec. 1141; it should be the recorded copy of the original list filed by the county treasurer under that section, and can only be legitimately made from that original; it appears, then, that this recorded copy is now in the clerk's office; we think it might well be held that its presence in the clerk's office is *prima facie* proof that the original was duly filed, because the record could only be legitimately made from the original list filed. But the court having found as a fact that the original list was never in fact filed, and this finding not having been excepted to by either party, it cannot be reviewed, but must be accepted as a fact.

The question of the effect of the omission to file this statement upon the tax sale and deed seems never to have been discussed in this court. The fact appeared in the case of *Pier v. Oneida Co.* 93 Wis. 463, 67 N. W. 702. In that case, however, two additional defects in the tax proceedings were found, namely: (1) that the delinquent returns of the town treasurer were unsigned, and (2) that no affidavits of posting of notices of tax sale were filed with the county clerk. The tax certificates were set aside by the trial court, and the judgment was affirmed by this court, it being said in the opinion that there could be no doubt that the tax certificates were void on account of the irregularities found by the trial court; and the case of *Ward v. Walters,* 63 Wis. 39, 22 N. W. 844, was cited to support the conclusion. The last-named case was a case in which the tax sale was held void because of failure to properly post the notices of sale. This omission has always been held to be fatal to the validity of the sale; it appeared in the *Pier Case,* and was enough of itself to invalidate the sale, and so it was not deemed necessary to discuss what might have been the effect of the failure of the treasurer to file a statement of the lands sold, if that defect

stood alone. We do not think, therefore, that the *Pier Case* can be considered as a decision that such failure alone would be fatal.

Considering the question in view of the primary object of the requirement, and the decision of this court in the case of *Wright v. Sperry,* 21 Wis. 336, we do not think it should be held that this failure renders the deed void. The list is required to be filed, evidently, for the information of the county clerk, so that he may know by the records in his own office, when parties come to redeem, what parcels have been sold and what sum is necessary to be paid. It is only to a limited extent, if at all, for the benefit of the property owner, for he may ascertain the fact of sale from the list preserved in the county treasurer's office as well as from the list filed in the clerk's office. This court has held in *Wright v. Sperry, supra,* that the requirement that a notice of the expiration of the period of redemption be published six months before such expiration (sec. 1170, Stats. 1898) was directory merely, and that a failure to comply therewith does not avoid the deed. The decision was placed on the ground that the act was one required to be done after the sale, and over which the purchaser has no control, and hence that it ought not to affect his rights; there being no provision prohibiting the issuance of a deed in case the statement is not filed. This decision has not been overruled, and has stood as the unquestioned law for thirty-five years. The reasons on which it is based apply with greater force to the omission of duty here under consideration than to the omission in that case, because the notice of expiration of the time for redemption is plainly intended for the benefit of the property owner alone, and is manifestly of prime importance to him. We hold, therefore, that the requirement that the statement be filed is directory, and not mandatory, and hence that the failure to comply with it does not invalidate the deed.

4. It is urged that the tax deed is void because the evidence

shows that there was ample personal property on the farm, belonging to the occupants, upon which the collecting officer should have levied, and out of which the tax should have been paid. It is undisputed that the town treasurer made the usual verified return upon the delinquent list, stating that he was unable to find any personal property out of which to collect the tax, but the evidence shows that there was considerable personal property on the farm belonging to the occupants, and that no attempt was made to levy thereon. This contention raises two questions: (a) Whether taxes upon real estate are required to be collected from personal property if personal property is to be found; and (b) whether the return of *nulla bona,* made by the collector, is conclusive as to the fact. We are not unmindful of the strength of the argument which is made, to the effect that taxes upon real estate were intended to be collected from the real estate alone, based upon the fact that the statute (sec. 1088, Stats. 1898) makes such taxes a lien upon the land until paid. There are other provisions, however, which seem to indicate a clear purpose that such taxes are to be collected from the personal property of the owner or occupant. Thus, sec. 1097 provides that, in case any person refuses or neglects to pay *the tax* imposed upon him, the treasurer shall levy and collect the same by distress and sale of such person's goods and chattels. Sec. 1043 provides that real property shall be assessed to the owner if known; otherwise to the occupant if ascertainable; otherwise without name. Sec. 1081 provides that the warrant shall command the collector to collect from each of the persons and corporations named in the roll, and from the owners or occupants named of the real estate described therein, the taxes set opposite their respective names and to the several parcels of land therein described, and, in case *any* person or corporation upon whom such tax is imposed shall refuse or neglect to pay the same, then to levy and collect the same by distress and sale of his goods and chattels. Sec. 1113

provides for a return to be made, by the town treasurer to the county treasurer, of delinquent taxes, covering both real and personal taxes which are unpaid; and sec. 1114 provides that he shall attach to the return an affidavit stating that the sums returned as unpaid have not been paid, and that he has not, upon diligent inquiry, been able to discover any goods or chattels belonging to the persons charged with such unpaid taxes whereon he could levy the same. Sec. 1154 provides that when a tax on real estate shall have been paid by, *or collected* of, an occupant or tenant, he shall be entitled to recover the same from the person under whom he holds, with interest at twelve per cent. There are other sections which have some bearing on the subject, and all seem to point more or less directly to the conclusion that the legislative intention is that such taxes shall be collected from the personal property of the owner or occupant, if possible.

There seems to have been no case in which the question has been debated and directly decided in this court, although there have been some cases in which it has been recognized that the tax is to be collected from personal property if possible. Thus, in *McLean v. Cook*, 23 Wis. 364, where a tax collector had seized the personal property of an occupant of lands for the payment of the tax levied upon the land, and was sued by the occupant therefor, a judgment in favor of the officer was affirmed. No such result could have been reached unless it was the duty of the officer to collect the tax from the personal property of the occupant. In *Kaehler v. Dobberpuhl,* 60 Wis. 256, 18 N. W. 841, the right of the collector to seize and sell personal property of the owner of real estate, in order to pay a tax levied upon the real estate, is recognized and affirmed without discussion. Doubtless, other cases of a similar nature might be found. We think, therefore, that it must be held that taxes upon real estate are to be collected primarily out of the personalty of the owner or occupant.

This brings us to the question of the effect of the treas-

urer's return of *nulla bona.* Upon this question, there are decisions in other states to the effect that such return is merely *prima facie* evidence of the fact, and may be disproved by parol evidence. See Black, Tax Titles (2nd ed.) § 257, and cases cited. These decisions are, however, based upon statutes quite dissimilar to our own, and afford little help. It is a new question in this state, and we feel at liberty to make our own rule. To us it seems very unwise policy to make a tax deed subject to attack and overthrow, years after its execution, by parol proof of the existence of personal property out of which it might have been collected, when the record shows every step in the proceedings to have been taken in exact accord with the statute. The sworn return must have been intended to serve some substantial purpose. That purpose is evidently to establish the fact that the collector has done his duty in this regard. If it is only to serve as *prima facie* proof, liable to be overthrown by the mere memory of a witness, it is little better than an idle ceremony, and the requirement that such a return be made might as well be dispensed with. We have no hesitation in holding that the return is conclusive, and that the remedy for a false return should be against the officer making it.

We have now discussed all the objections made to the validity of the tax deed, and come to the question whether the defendants *Charles* and *Adelbert Allen* can assert their title as against the plaintiffs. It is sometimes stated as a general principle of law that one cotenant cannot purchase an outstanding title to lands of which he and his cotenants have an imperfect title, and assert such title as against his cotenants, but that such purchase will be held to be made for the benefit of all, and the purchaser will only be entitled to contribution from his cotenants according to their proportionate shares of the estate. The leading case in which the doctrine was definitely laid down is that of *Van Horne v. Fonda,* 5 Johns. Ch. 388, where Chancellor KENT states the proposition in terms

which have been twice quoted with approval by this court. The reason given is that "it is not consistent with good faith, nor with the duty which the connection of the parties as claimants of a common subject created, that one of them should be able, without the consent of the other, to buy in an outstanding title and appropriate the whole subject to himself, and thus undermine and oust his companion." In the case of *Frentz v. Klotsch,* 28 Wis. 312, while the general doctrine above stated is recognized, it is suggested that the doctrine may not apply to tenants in common who acquire unconnected interests in the same property by distinct purchases, unless there are some peculiar relations of trust and confidence between them rendering the acquisition of an outstanding title by one inconsistent with good faith. The question was not, however, definitely passed upon in this case. In *Wright v. Sperry,* 21 Wis. 336, the reasoning of Chancellor Kent in *Van Horne v. Fonda, supra,* is cited with apparent approval, but it is said that this doctrine does not go to the extent that in no case can a tenant in common purchase an outstanding title for his own exclusive benefit, and that the doctrine of the *Van Horne Case* applies only where tenants in common are in actual possession of the land, or where one enters as such tenant, and so his possession is the possession of all the tenants. In *Hunter v. Bosworth,* 43 Wis. 583, the opinion was by Chief Justice Ryan, and the language of the *Van Horne Case* was quoted *in extenso,* and applied to the case. It was there further said:

"The rule rests, not upon the strict relation of joint tenants, or tenants in common, but upon community of interests in a common title, creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the others."

This was a case where one of the two chattel mortgagees in common of a stock of goods had secured a subsequent mortgage for another debt on after-acquired goods. The first

mortgage in terms covered after-acquired property, and it
was held that the relations between the two mortgagees were
such under the first mortgage that the mortgagee who took the
second mortgage must apply its proceeds on the first mortgage
until it was paid. In *Hannig v. Mueller,* 82 Wis. 235, 52
N. W. 98, one tenant in common in possession acquired an
outstanding tax title, and claimed to exclude her cotenants,
but it was held that, because she was a tenant in common
when she acquired the tax title, she could not hold the same
adversely to her cotenants, and that her acquisition of the tax
title simply operated as an extinguishment thereof. The sub-
ject has been much discussed in the decisions and in the text-
books. 17 Am. & Eng. Ency. of Law (2nd ed.) 674, 675,
and cases cited in note 1. Freem. Cotenancy (2nd ed.)
§§ 154, 155, 156, 159. In Pennsylvania, the rule seems to
have been established that when land has been sold for taxes
to a stranger, and the time for redemption has expired, any
previously existing cotenancy is determined, and either of the
former cotenants may purchase the tax title and assert it
against his cotenants. *Lewis v. Robinson,* 10 Watts, 354;
Freem. Cotenancy, § 159. This rule, however, has obtained
little approval elsewhere. It seems to us that the true rule,
and the rule which has been, impliedly at least, adopted by
this court, is quite well expressed by Mr. Freeman in his
work on Cotenancy, previously cited (at sec. 155), where he
says:

"As a rule forbidding the acquisition of adverse titles by a
cotenant from being asserted against his companions is al-
ways said to be based upon considerations of mutual trust and
confidence supposed to be existing between the parties, the
question naturally arises whether the rule is applicable where
the reasons on which it is based are absent. Joint tenants,
tenants by entirety, and coparceners always hold under the
same title. Their union of interest and of title is so com-
plete that beyond all doubt such a relation of trust and con-
fidence unavoidably results therefrom that neither will be

permitted to act in hostility to the interests of the others in relation to the joint estate. Tenants in common, on the other hand, may claim under separate conveyances and through different grantors; their only unity is that of right to the possession of the common subject of ownership. . . . An examination of the decisions clearly shows that tenants in common are not *necessarily* prohibited from asserting an adverse title. If their interests accrue at different times, and under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his cotenancy to secure an advantage, may acquire and assert a superior, outstanding title, especially where the cotenants are not in joint possession of the premises."

The principle is well understood that a person in possession of lands, and whose duty it is to pay the taxes thereon, cannot suffer the property to be sold for taxes, and obtain a title thereby which he can assert against any one to whom he owed the duty. This rule has been many times applied by this court. *Smith v. Lewis,* 20 Wis. 350; *Bassett v. Welch,* 22 Wis. 175; *Hannig v. Mueller,* 82 Wis. 235, 52 N. W. 98, and cases cited at close of opinion. Under this rule, one tenant in common, in the sole or joint possession of lands, could not buy in an outstanding tax title issued for taxes accruing during his possession, and assert it to cut off his cotenants, whether the cotenancy existed under the same or different instruments. The mere fact of possession, with the resulting duty to pay the taxes imposed, renders the nonpayment of the taxes and the acquisition of a tax title acts of bad faith to his cotenants. But, as we have seen from the preceding discussion, in the case of cotenants whose rights arise under the same instrument or act of the law, such as coparceners, devisees, tenants by entirety, or joint tenants, the union of title and interest is so close, and the relation of the parties so intimate, that from these facts alone a relation of trust and confidence is considered to exist, forbidding the acquisition of an outstanding title by one adverse to his cotenants, regardless of the question

of possession. If, in the last-named case, the cotenant who purchases the adverse tax title be in fact in possession, it simply adds another reason for the rule of disability.

So it must be held, in the present case, that the defendants *Charles* and *Adelbert* cannot assert the tax title secured from Field to cut off the plaintiffs, but that it must be held by them for the benefit of all the tenants, upon condition of the payment by the plaintiffs of the amounts which in equity they ought to pay. Had the purchase of the tax title been made by the tenant in possession, whose duty it was to pay the taxes, or had it been made collusively for his benefit, the plaintiffs should only be required to pay their proportionate shares of the amount necessary to redeem from the tax, regardless of the amount paid for the title; but as the purchase was made by *Charles,* who was never in possession, and no collusion is found between him and *Adelbert,* the plaintiffs should be required to pay into court their proportionate shares of the amount paid by him for the tax title, with interest, which amount is alleged in the complaint, and admitted by the answer, to have been the sum of $100.

The judgment below having been one of dismissal of the complaint on the ground that the plaintiffs had no interest in the property, the question whether the mortgages executed by *Charles* and *Adelbert* to the defendants *Mixner* and *Wernick* constitute liens upon the interests in the property now found to exist in the plaintiffs was not covered by any finding, nor was the question mentioned in this court, either in printed brief or oral argument. The record shows nothing to impeach the validity of the mortgages as against the interests of the makers, but whether they constitute liens upon the undivided shares of the plaintiffs is a legal question, which, if contested, should only be decided after proper presentation and argument of the question by counsel. We do not deem it proper to decide it now, and we therefore remit the cause to the trial court without direction upon this point, except the

direction that the question, if raised, be considered and determined by the trial court, and that the rights of the mortgagees be protected in the final judgment.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment in accordance with this opinion.

BARDEEN, J. I agree with the conclusions stated in the opinion filed in this case except in so far as it holds that the requirements of sec. 1141 are directory, merely. In that regard, I think the opinion runs counter to the spirit of many decisions of this court, and is contrary to the evident purpose of the legislature. All tax proceedings are necessarily adversary proceedings. The power to sell land for taxes had no existence at common law. It exists only by virtue of statute law. It is harsh in its operation and merciless in its results. It is against common rights, and the fact that a purchaser may get an estate of great value for a trifle has led the courts to deny the authority to sell except by close pursuit of the law that creates the authority. For these reasons, the authorities are uniform in requiring great precision and close adherence to the statutory plan. Usually, there are three parties interested in the enforcement of tax dues: the land owner, the purchaser, and the government. Their interests are not strictly harmonious. To preserve a just balance between these opposing forces requires that the rights of the three should be constantly kept in mind. The rule which seems to appeal most strongly to the judicial mind, in considering the relative rights of the interested parties, is the one which requires, on behalf of the owner of land, full and substantial compliance, by the taxing officer, with all provisions that are for his benefit. The procedure is somewhat complex and technical, but, being distinctly prescribed by statute, there is little excuse for departure therefrom. Every step, being adversary to the rights of the land owner, from the listing of

the lands to the execution and record of the tax deed, must be·
followed with substantial strictness.   This includes the mak-
ing up and preservation of the record, as well as the doing of·
the acts which result in the sale.   The making of the record
of the act done is made just as important and substantial as·
the act itself.   This is so because it is made so by the legisla-
ture, and also because of the great hazard of allowing the·
proof of the taking of the various steps to rest in parol.   It is
a matter both of public and private interest that a man's prop-
erty shall not be taken from him except in conformity to·
forms of law.   When the legislature has marked out a plan,
one step is just as essential as another, if the rights of the·
owner are affected thereby, and this, as already stated, in-
cludes the act and the record of the act.   This court has
recognized the binding force of this statement in a multitude·
of cases.   We need only to turn to the books to find many
decisions which, in letter and spirit, respond to the demands·
that taxing officers must adhere strictly to the commands of
the statute.

Under the scheme mapped out by the legislature, the delin-
quent return is made to the county treasurer.   He is charged·
with the duty of making the sale.   Every step leading up to·
that event must be taken with the utmost care, and every re-
quirement of the statute must be closely pursued.   But his·
duties do not end with the sale.   A record of his proceedings
must be made up,——not merely for the benefit of the purchaser
or those who may obtain interests in the land sold.   This
record is of the utmost importance to the owner.   He has a
right to demand strict compliance with all the forms of law·
before his property shall be taken from him, and it is the
record so made that informs him and the public that·such re-
quirements have been met.   The sale, however, does not divest·
him entirely of his interest in the land.   The law wisely and·
justly gives him a period of redemption.   The treasurer's
duties end when the sale is made and his record thereof duly·

filed. Sec. 1141 requires him, immediately after the close of the sale, to deposit, in the office of the county clerk, "all affidavits, notices and papers in relation to such sale," to be filed and preserved therein. If no record proof of the various steps is made, it is fatal to the sale, and parol proof cannot supply it. *Hebard v. Ashland Co.* 55 Wis. 145, 12 N. W. 437; *Hiles v. Cate,* 75 Wis. 91, 43 N. W. 802; *Iverslie v. Spaulding,* 32 Wis. 394.

But the statute makes a further requirement. It says that the treasurer shall also file, with the county clerk, "a statement containing a particular description of each tract or parcel thereof of land so sold by him, specifying the name of the person to whom sold, the amount for which the same was sold, and the name of the owner if known; and the said treasurer and clerk shall each record such statement in their respective offices." There can be but one possible purpose of requiring this statement to be recorded in the clerk's office. Upon him is thrust the duty of making out redemption receipts. To him the owner of the land applies when he desires to exercise his right of redemption. In his office search is made to ascertain if lands have been sold and the amount due for delinquent taxes. In most, if not all, counties a tax abstract is kept by the county clerk. That abstract can only be made from the statement received by him from the county treasurer. The opinion says that the filing of this statement with the county clerk "is only to a limited extent, if at all, for the benefit of the owner of the property," and the conclusion is "that the requirement that the statement be filed is directory, and not mandatory." If the statute is directory merely, then the treasurer may exercise his pleasure in filing it. He cannot be compelled to file it. If he fails to do so, I have been greatly at loss to discover how the clerk is ever going to be able to make up an authentic record in his office. I have an absolute right to redeem my lands after sale. The law requires me to make my application to the county clerk.

Sec. 1165. I go to his office, and am informed that he has no record of the sale. I have inspected the record in the treasurer's office as suggested in the opinion, and find my land has been duly sold. The officer charged with the duty of giving me the documents that clear my title of the lien of the tax is powerless to act. His right to act has no basis unless it be upon a record made up as the law requires. Sec. 1167 requires him to enter on the sales list kept by him, and which he can make up only from the statement filed with him by the treasurer, certain facts relative to the redemption. How is it possible for him to comply with the law in this regard if he has no such list? How can he make an authentic sales list if the statement mentioned by sec. 1141 is not filed? Is it true that these requirements are only to a limited extent for the benefit of the land owner? My idea is that it is immensely for his benefit, and that the requirement is one of the necessary steps in the general plan, which cannot be omitted without leading to unjust, not to say absurd, results.

In *Iverslie v. Spaulding,* 32 Wis. 394, this court held that the object of the provisions of sec. 1141 was to enable persons to ascertain whether the law had been complied with, and that the files and records are the only evidence which can be admitted to show the facts. In the case at bar, the trial court affirmatively found that the county treasurer did not, after the sale, file in the county clerk's office a list of the lands sold. Such finding leaves subsequent proceedings without any basis to rest upon. The statute is mandatory because it provides a vital link in the chain of tax proceedings. The land owner, more than any other, is interested in having the statute complied with. A failure to comply with it, in my judgment, vitiates subsequent proceedings, and renders the tax deed void.