COBBAN and others, Plaintiffs and Respondents, vs. NORTH-
ERN WISCONSIN STATE FAIR ASSOCIATION, Defendant
and Respondent, and CHIPPEWA COUNTY, Defendant
and Appellant.

*April 11—June 29, 1933.*

For the appellant there were briefs by *W. M. Bowe*, special counsel for Chippewa county, and *Robert L. Wiley*, district attorney, and oral argument by *Henry J. Christoffersen* of Chippewa Falls.

*Alexander Wiley* of Chippewa Falls, for the plaintiffs and respondents.

The following opinion was filed May 9, 1933:

NELSON, J.   Chippewa county first contends that the court had no power to modify its judgment after the term at which it was rendered unless specifically authorized by statute so to do.   In support of its contention the following authorities and statutes are cited: *Salter v. Hilgen,* 40 Wis. 363; *Pier v. Amory,* 40 Wis. 571; *Williams v. Hayes,* 68 Wis. 248, 32 N. W. 44; *Turner v. Nachtsheim,* 71 Wis. 16, 36 N. W. 637; *Laugesen v. Sanford,* 135 Wis. 252, 115 N. W. 308; *Fischbeck v. Mielenz,* 162 Wis. 12, 154 N. W. 701; *Kuether v. State,* 174 Wis. 538, 183 N. W. 695, and sec. 278.09, Stats.   It is asserted that sec. 278.09 does not authorize the court to amend a judgment of foreclosure and sale in the respect complained of.   In the view we take of this controversy it is unnecessary to consider this contention.

Chippewa county next contends that the court erred in restraining it and its officers from selling or disposing of

the tax certificates mentioned, and from applying for and executing at any time a deed or deeds based on any of said certificates. We think this contention sound.

Such facts as are necessary to an understanding of this controversy are as follows: Northern Wisconsin State Fair Association was, at all times hereinafter mentioned, a corporation principally engaged in the business of promoting the Northern Wisconsin State Fair at Chippewa Falls. In 1917, pursuant to a resolution of the board of supervisors of Chippewa county, a deed was executed by its proper officers conveying the lands in question, which belonged to the county, to the Fair Association. This deed was in all respects similar to a deed to be hereinafter mentioned except as to the amount of a mortgage which the association was authorized to place upon said lands. In 1918 the lands were quitclaimed to the county so as to permit it to reconvey the said lands to the association. The purpose of that transaction evidently was to give the association authority to increase the amount of the mortgage. On October 9, 1922, the association again quitclaimed the title back to the county so as to permit it again to deed the lands back to the association under a deed authorizing the association to mortgage the lands for not to exceed $30,000. All of the deeds given by the county to the association were identical in form except as to the amount of the mortgage authorized to be given by the association. The deed of October 9, 1922, with which we are concerned, quitclaimed unto the association all of the right, title, interest, etc., which the county had in the lands described therein upon the following conditions subsequent:

"Provided always, and these presents are upon the following conditions, which conditions shall be construed as conditions subsequent and not as covenants:

"First, if said party of the second part shall be dissolved or cease to exist, or shall convey, mortgage, or incumber, or lease said land, or any part thereof (except as hereinafter

authorized), without the consent of the county board of supervisors of said county, or

"Second, if said party of the second part shall fail or omit for any two or more consecutive years in the future, to hold an annual fair in good faith on said lands, unless such failure is caused by operation of law, or is permitted by said county board of supervisors, or

"Third, if said association shall fail to keep the buildings, fences, and improvements on said lands in reasonably good condition and repair, and keep the buildings thereon insured against fire for a reasonable amount,

"Then and either of said contingencies, this deed shall become void, and title and right of immediate possession to said lands and appurtenances shall revert to and become vested in the said party of the first part, its successors and assigns.

"Provided further, that notwithstanding said conditions hereinbefore contained, said Northern Wisconsin State Fair Association, party of the second part, is hereby authorized and empowered to mortgage said lands and appurtenances in a sum or sums not exceeding $30,000 in the aggregate in its discretion, for the purpose of borrowing money to erect and construct and improve buildings on said land, and to make changes and improvements thereon for fair ground purposes; said mortgage or mortgages, however, shall not at any one time exceed the sum of $30,000 in the aggregate exclusive of interest; and said mortgage or mortgages shall have precedence and priority over any right or title which said party of the first part shall have or retain in and to said lands, buildings and improvements by virtue of the conditions hereinbefore contained or otherwise, and shall have the same effect as if this deed were absolute and unconditional."

In 1923 there was levied against said lands, by the city of Chippewa Falls, a special tax of $100 for street oiling. This tax was not paid and was returned to the county as delinquent. In 1927 the city of Chippewa Falls paved a street adjacent to the association's property and also constructed certain sewers therein. The special assessments to which these improvements give rise were divided into five annual

instalments. None of these instalments was paid by the association and each was subsequently returned to the county as delinquent. Upon the return of these delinquent assessments the county treasurer credited the city treasurer with the amount thereof pursuant to the statute. Sec. 74.19. Each year following the return of a delinquent assessment the county treasurer offered to sell the lands for the taxes and charges. Sec. 74.39. It appears that there were no bidders for such certificates, and the county treasurer, pursuant to the statute, sec. 74.42, issued certificates to Chippewa county. The county board, at its May meeting in 1932, directed the county clerk to take necessary steps to obtain tax deeds on certain of said certificates. Notices of application for tax deeds were thereafter duly served.

No question is raised as to the legality of the taxes based upon the special improvements made by the city of Chippewa Falls or as to the liability of the association to pay them, but the plaintiffs contend that the relation between the association and the county was akin to that of mortgagor and mortgagee and that therefore the county could not, under the well established law applicable to such a relation, take a tax deed effective as against the association. The circuit court was evidently of the opinion that Chippewa county was one of the owners of the property and was so interested in the property that to permit it to allow the taxes to become delinquent and then take tax deeds on the certificates issued in its name would be inequitable; that under the deed and resolutions of the county board authorizing the association to mortgage the lands the relation between the county and the association was that of mortgagor and mortgagee; and that the county should not be permitted to defeat the plaintiffs' mortgage by taking tax deeds. The court relied on *Roach v. Sanborn Land Co.* 140 Wis. 435, 122 N. W. 1020; *Allen v. Allen,* 114 Wis. 615, 91 N. W. 218, and 41 Corp. Jur.

p. 494. The law of those cases is not questioned, but in our opinion it has no application to the facts in this case. The deed of the county to the association was obviously one upon condition subsequent. To construe it otherwise would require its terms and very nature to be ignored. The county was in no sense a party to a mortgage and the relation between the county and the association was not that of mortgagor and mortgagee. This controversy is ruled by the law applicable to estates upon condition subsequent. Such estates, when created and until defeated by re-entry, have the same qualities and incidents as though no conditions were annexed thereto. 21 Corp. Jur. pp. 929, 930, § 39. In *Mash v. Bloom,* 133 Wis. 646, 114 N. W. 457, the rule is stated thus (p. 653) :

" 'If the condition subsequent were broken, that did not *ipso facto* produce a reverter of the title. The estate continued in full force until the proper step was taken to consummate the forfeiture. This could be done only by the grantor during his lifetime, and after his death by those in privity of blood with him.' Under our statute the forfeiture must be consummated and title revested before ejectment can be brought."

Under the law relating to estates upon conditions subsequent, no duty rests upon the grantor to pay the taxes prior to re-entry. While some of the conditions of the deed had been broken, no re-entry was ever made by the county.

It was the duty of the association to pay the special taxes. Upon failure so to do the plaintiffs, as mortgagees, had the right to pay them and add the amounts thereof to the mortgage debt. Because it happens in this case that the county is both the grantor of an estate upon condition subsequent, and also a governmental unit required by law to do certain things with respect to delinquent taxes returned to it, does not alter the situation. The mere fact that the county issued certificates in its own name does not show that it acted in a

proprietary capacity, or purchased them for the purpose of protecting its title when and if regained upon re-entry for conditions broken.

No case has been cited in which it is held or even suggested that the relation between a grantor and grantee under a deed, upon condition subsequent, is that of mortgagor and mortgagee, or that it is the duty of the grantor under such a deed to pay the taxes levied against such lands.

As before stated, no attack is made upon the legality of the special taxes levied by the city of Chippewa Falls. Should the validity of the order be sustained, it would forever prevent the collection of the taxes, since under it the lands may not be subjected to tax deeds.

The original foreclosure judgment contained the usual provision permitting the plaintiffs to pay all taxes on the mortgaged premises which were then or might thereafter become due, and to have a lien upon the premises for the amounts so paid together with interest at the rate of ten per cent., etc. To afford the plaintiffs reasonable opportunity now to redeem the taxes involved in the several applications for tax deeds, they are hereby given thirty days after the *remittitur* in this action is filed in the court below so to do.

*By the Court.*—That part of the order appealed from is hereby reversed.

A motion for a rehearing was denied, with $25 costs, on June 29, 1933.