## J. CHARLES WOLF v. CITY OF LANSING.

*Intoxicating liquors—Saloon licenses—Local regulation.*

1. The charter of Lansing, which was adopted while it was still unconstitutional to license the sale of liquor, classifies all persons who sell by the glass beverages that are usually sold in a saloon as saloon-keepers, and requires them to take out a license, but adds a proviso that the act shall not be construed as licensing the sale of intoxicating liquors. *Held*, that an ordinance which exacted payment of $100 "for each saloon license" was nevertheless valid, as a saloon is not necessarily or exclusively a place for liquor selling. And the imposition of a heavy fee may be proper where the saloon-keeper is placed under no restrictions as to the stock he deals in.

2. Where the power to fix a license fee is given by a law to a municipal council, its discretion in fixing the amount is not reviewable by the courts.

3. The enactment of a liquor-tax law does not estop the State from empowering municipal councils to further regulate the local sale of liquor by requiring saloon-keepers to take out licenses.

Error to Ingham. (Gridley, J.) April 9.—April 16.

ASSUMPSIT.   Defendant brings error.   Reversed.

*A. F. Rouse* and *E. C. Chapin* for appellant.

*M. V. & R. A. Montgomery* for appellee.

COOLEY, C. J.   The charter of the city of Lansing provides that

"No person shall engage in or exercise the business or occupation of tavern-keeper, inn-holder, common victualer, or saloon-keeper, within the limits of said city, until he is first licensed as such by the common council; all hotel or tavern-keepers, inn-holders, or common victualers, who shall keep a bar in connection with their hotel, tavern, inn, or common victualing establishment, and all grocers, druggists, and all other persons who shall sell beverages by the glass or cup in their respective establishments, which are usually sold in a saloon, shall be deemed saloon-keepers within the meaning of this act, and shall be required to take a license as such: *provided*, that nothing in this act shall be construed as licensing the sale of intoxicating liquors as a beverage." Charter, tit. 4, § 21; Loc. Acts 1875, p. 172.

April 26, 1881, the common council of the city passed an ordinance, the first section of which provided that

"No person or persons shall engage in or exercise the business or occupation of tavern or hotel-keeper, either personally or by agent, until he or they shall have obtained a license therefor."

Another section makes a similar provision for some other occupations.   Section five of the ordinance provides that

"No license shall be issued under the provisions of this ordinance until the applicant or applicants shall pay to the city treasurer the sum hereinafter specified, and presents the treasurer's receipt for the same to the mayor.   For each hotel, tavern, or inn license, five dollars; for each eating-house or common victualer's license, two dollars; for each saloon license, one hundred dollars; for each bagatelle, billiard, or other gaming table, five dollars; for each bowling alley, five dollars; for each shooting gallery, gaming board, or machine of any kind whatever, five dollars per day."

When this ordinance took effect there were seventeen saloon-keepers in the city of Lansing who were engaged in

the sale of intoxicating drinks, the plaintiff in this suit being one of them. The plaintiff's business was selling such drinks, together with cigars. The license fee being demanded of him, he paid it under protest, and subsequently brought this suit to recover it back.

On the trial the plaintiff proved that he had paid the State tax of two hundred dollars, and had executed and delivered to the county treasurer the bond required of liquor dealers by the statute, which bond had been approved by the common council of the city. He also proved that the entire police force of the city, not including constables, consisted of four men, each of whom was paid two dollars a day; that the actual cost of issuing a license under the ordinance would not exceed fifty cents; that aside from said saloons there were seven restaurants, which, under the literal meaning of the term, might be called saloons, where eatables, ice cream, nuts, candies, etc., were sold, and of none of these was the one hundred dollars demanded. These are all the facts bearing upon the legal questions which have been raised.

The plaintiff contends that the ordinance undertakes by indirection to license the sale of intoxicating drinks, and that for that reason it is void. In *Kitson v. Ann Arbor* 26 Mich. 325, it was held by this Court that the license of a saloon was not the license of sales of intoxicating drinks, and that consequently such a license might be valid, though the Constitution as it then stood prohibited the granting of any license for the sale of such drinks. This was upon the ground that it is not a necessary part of the business of a saloon-keeper to sell intoxicating drinks, and the license must be understood to contemplate only that which might lawfully be done. But in *Dewar v. People* 40 Mich. 401, an ordinance of the city of Ludington, passed while the constitutional provision remained in force, which required saloon and restaurant-keepers to take out a license, but which provided that "the words saloon and restaurant, as used in this ordinance, shall not be construed to include any place of business kept exclusively and only for the purpose of selling any or all of the following articles, to-wit, cigars, tobacco, confection-

53 MICH—24

ery, nuts, candies, ice cream, pop, cakes, fruits, vegetables, or lemonade," was held void. The reason assigned was that "the exceptions seem carefully designed to exclude from the operation of the ordinance all keepers of saloons and restaurants not engaged in the sale of intoxicating drinks, but to include all those who are or shall be so engaged. The ordinance is therefore manifestly an ordinance to license saloons and restaurants for the sale of intoxicating drinks, because in its terms it applies to them and not to others. It is in this particular radically different from the ordinance of Ann Arbor, which was sustained in *Kitson v. Ann Arbor* 26 Mich. 325, for that applied to saloons generally." And see *Mount Pleasant v. Vansice* 43 Mich. 361.

It is contended for the plaintiff that the case of *Dewar* controls this. We do not think so. In that case the exception was carefully worded with a view to limit the operation of the ordinance to those who sold intoxicating drinks and who sold nothing else. In this case the ordinance is general, but it discriminates as regards the fees demanded in favor of those whose business is so restricted as to be unaccompanied by the evils which are so likely to attend the keeping of saloons. The saloon-keeper who restricts his business to the sale of food and harmless refreshments must nevertheless take out a license, but if he proposes to take all the customary privileges of a saloon-keeper and sell, as he may think for his interest, anything which is commonly found in saloons, the larger fee is very properly demanded of him. This plaintiff was in no way restricted as to the saloon stock he might deal in, and his own showing is that he did not limit his sales exclusively to liquors.

But it is said the license fee is excessive; and evidence is put into the case to show this. The cost of issuing the license seems to be insignificant, and the cost of the police force appears so small that it may be argued with much force that the sum demanded of saloon-keepers is beyond what the cost of regulation and of public protection as against the evils caused by their business can possibly be. But the local legislature is a better judge of this than the courts can be,

and the discretion to fix the amount is confided to the common council, and not to the judiciary. *Ash v. People* 11 Mich. 347. And if we had the right to review their action, we could not say that the direct and indirect cost to the city, occasioned by the existence within it of the business which the plaintiff and others carried on, was not probably equal to the sum total of the license fees demanded of them.

The point is made that as the State taxes the sale of intoxicants for the purposes of regulation and restraint, the municipalities cannot be empowered to impose further burdens for the like purpose. We do not agree in this. It is customary and very proper for the State to give to its municipal bodies large powers of regulation in respect to subjects which are, to some extent, regulated by State laws also. The circumstances of different localities require different regulations; and the general law of the State may need to be supplemented by local regulations. The power of the State to permit this is ample.

The judgment of the circuit court, which was in favor of the plaintiff, must be reversed with costs of both courts.

The other Justices concurred.