146  163
147  383

146  163
d158  49.3

KENASTON v. RIKER.

INTOXICATING LIQUORS—MUNICIPAL ORDINANCE— LICENSE — MANDAMUS—PROPRIETY.

On certiorari to review the action of a circuit judge in refusing to issue a mandamus compelling a justice of the peace to issue a warrant for violation of a municipal ordinance licensing saloons, the order of the circuit judge is affirmed; Mr. Justice BLAIR, with whom concur Justices MONTGOMERY and OSTRANDER, writing for affirmance on the ground that a license of $500 per year as applied to saloons selling nonintoxicating drinks is excessive, and Mr. Justice HOOKER, with whom concurs Mr. Justice GRANT, writing for affirmance on the ground that with four justices of the peace in each township, to whom application for a warrant could be made, it was unnecessary to review the refusal of one of them and therewith decide the validity of the ordinance by mandamus.

Certiorari to Barry; Smith, J. Submitted April 3, 1906. (Calendar No. 21,567.) Decided October 29, 1906.

Mandamus by Alonzo E. Kenaston to compel Marcus W. Riker, justice of the peace, to issue a warrant against Frank Herrick for a violation of an ordinance. There was an order denying the writ, and relator brings certiorari. Affirmed.

*Alonzo E. Kenaston* (*Thomas & Pryor*, of counsel), for relator.

*Colgrove & Potter*, for respondent.

*Thomas Sullivan, Fred. W. Walker*, and *Robert B. Dawson*, for Herrick.

BLAIR, J. On July 5, 1905, relator applied to respondent, one of the justices of the peace of the city of Hastings, to take his complaint and issue a warrant against one Herrick for the offense of violating an ordinance of the city entitled:

"An ordinance relative to licensing the keeping of saloons in the city of Hastings and the conduct thereof, and prescribing penalties for its violation."

The respondent refused to accept the complaint and issue the warrant, upon the ground that the ordinance was invalid for various reasons. Thereupon, relator applied to the circuit court for a writ of mandamus to compel the magistrate to receive the complaint and issue the warrant. Upon the hearing before him, the circuit judge denied relator's application, and this order relator seeks to review in this court upon certiorari.

The charter of the city provides, chapter 10, § 1:

"The city of Hastings shall, in addition to the other powers as are herein conferred, have the general powers and authority in this chapter mentioned; and the council may pass such ordinances in relation thereto, and for the exercise of the same, as they may deem proper." Act No. 402, Local Acts 1903.

Subdivision 12 of said section 1 of the same chapter authorizes the council to pass ordinances:

"To regulate and license all taverns and houses of public entertainment, all saloons, restaurants and eating houses, and to regulate and prescribe the location of saloons; but this shall not be construed as authorizing the licensing of the sale of intoxicating liquors."

The ordinance in question provides, section 1:

"That no person shall engage in the business of keeping a saloon within the limits of the city of Hastings, without first having obtained a license for that purpose from the city council of the city of Hastings.

"SECTION 2. Every person desiring to keep a saloon in the city of Hastings shall, before a license is obtained for that purpose, make an application in writing to the city council for such license, stating the location of the saloon, which application shall be accompanied by a recommendation signed by at least three reputable and respectable citizens of this city, certifying that the applicant is well known to them and is of means and qualified to keep a saloon and is of good reputation, fame, moral character and an orderly person.

"Such applicant shall also before receiving his license pay to the city treasurer five hundred dollars for such license, and take the treasurer's receipt therefor. Such license when issued shall state the location of the saloon as designated in the application and such location shall not be changed to any other part of the city without the consent of the city council, and no license shall extend beyond the first Monday in June next after the issue of the same."

The ordinance was passed at a regular meeting of the city council, there being five members present and all voting in favor of the ordinance. The city council is composed of the mayor, clerk, and eight aldermen. The original ordinance, in typewritten form, as enacted by the city council, was properly published in one of the newspapers printed and circulating within the city of Hastings, and after its publication was returned to the clerk's office, where it was duly filed.

The charter of the city provides that all ordinances shall require for their passage the concurrence of the majority of all the aldermen elected. It is further provided, section 3, chap. 8:

"No ordinance or resolution passed by the council shall have any force or effect, if, on the day of its passage, or the next day thereafter, the mayor, or other officer or person legally discharging the duties of mayor, shall lodge in the office of the clerk, a notice, in writing, suspending the immediate operation of such ordinance or resolution. If the mayor or other officer or person legally exercising the office of mayor, shall within three days after the passage of any such ordinance or resolution, lodge in the office of the city clerk his reasons in writing, why the same should not go into effect, the same shall not go into effect, nor have any legal operation, unless it shall, at a subsequent meeting of the council, be passed by a two-thirds vote of all the aldermen elect, exclusive of the mayor or other officer or person legally exercising the duties of the office of mayor, and if so repassed shall go into effect according to the terms thereof. If such reasons shall not be lodged with the clerk, as above provided, such ordinance or resolution shall have the same operation and effect as if no notice suspending the same had been lodged with the city

clerk, and no ordinance or resolution of the council shall go into operation until after the expiration of twenty-four hours after its passage, unless the said mayor or acting mayor shall approve the same in writing."

As provided in section 4 of chapter 8:

" All ordinances, when approved by the mayor, or when regularly· enacted, shall be immediately recorded by the clerk of the council, in a book to be called the 'record of ordinances,' and it shall be the duty of the mayor and clerk to authenticate the same by their official signatures upon such record."

Section 5 provides:

" Within one week after the passage of any ordinance, the same shall be published in some newspaper printed and circulated within the city, and the clerk shall immediately after such publication enter upon the record of ordinances, in the blank space to be left for such purpose, under the recorded ordinance a certificate stating in what newspaper and of what date such publication was made, and sign the same officially, and such certificate shall be prima facie evidence that legal publication of such ordinance has been made."

Section 6 provides:

." Whenever it shall be necessary to prove any of the laws, regulations or ordinances of the city, or any resolution adopted by the council thereof, the same may be read in all courts of justice, and in all proceedings: *First*, from a copy record thereof kept by the city clerk; *second*, from a copy thereof, or of such record thereof, certified by the city clerk under ·the seal of the city; *third*, from any volume of ordinances purporting to have been written or printed by authority of the council."

Immediately after the ordinance in question had been enacted, the clerk undertook to record the same in the book of ordinances. In copying the same, the clause of section 2 above quoted, beginning "such applicant shall also before receiving his license pay to the city treasurer five hundred dollars," etc., was omitted by mistake. The ordinance, as copied in the ordinance book, was signed and authenticated by the mayor and clerk, and a certifi-

cate of publication was attached to the ordinance, as required by the charter. At the suggestion of the city attorney, the clerk, whose office had then expired, wrote on the opposite page from that on which the ordinance was copied in the record book the words that had been omitted by mistake, and made a notation beneath them pointing out where these words ought to have followed in the original copy.

The circuit judge denied the writ upon the principal grounds:

1. That the ordinance had not been duly and legally authenticated, as required by the charter.

2. That, under the charter and the stipulation of the mayor and respondent as to the facts in the case, the city had no power to pass the ordinance.

We do not think the ordinance was invalidated by the failure of the clerk to copy it into the record book correctly. *Stevenson* v. *Bay City*, 26 Mich. 45; *Boehme* v. *City of Monroe*, 106 Mich. 401; McQuillin on Municipal Ordinances, § 100. The authority of the council to pass the ordinance in question, apart from the question of its reasonableness, is sustained by our previous decisions in *Kitson* v. *Mayor, etc., of Ann Arbor*, 26 Mich. 325; *Wolf* v. *City of Lansing*, 53 Mich. 367. The distinction between the case before us and *Dewar* v. *People*, 40 Mich. 401, upon which the circuit court relied, is clearly pointed out in *Wolf* v. *City of Lansing*. It is contended, however, by counsel for respondent, that the ordinance is unreasonable and oppressive, and for that reason invalid. We think this contention must be sustained.

The ordinance is not limited in its application to saloons where intoxicating drinks are sold. If it were, it would be invalid under the holding in the case of *Dewar* v. *People*, supra. In this case the ordinance is general, and applies to all saloons as defined in *Kitson* v. *Mayor, etc., of Ann Arbor*, supra, including the venders of harmless refreshments in the same category with those engaged in the sale of intoxicating beverages. No discrimination is

made as regards the fees demanded, as in the case of *Wolf* v. *City of Lansing*, but all are required to pay the license fee of $500 before engaging in business. We think that, as applied to those saloonkeepers who are not engaged in the sale of intoxicating drinks, the ordinance is oppressive and unreasonable, and, therefore, invalid. This seems to have been the view of the city authorities, since they have singled out and made complaints against those saloonkeepers only who are engaged in the sale of intoxicating drinks, and, by the stipulation of facts filed in the case, counsel for relator agreed that it was not intended to demand the fee of the keepers of other saloons.

The contention of respondent's counsel that the ordinance provides for a tax and, therefore, required a two-thirds vote is overruled by the recent case of *Wells* v. *Torrey*, 144 Mich. 689.

The order denying the writ of mandamus is affirmed.

MONTGOMERY and OSTRANDER, JJ., concurred with BLAIR, J.

HOOKER, J. (*concurring*). I am of the opinion that the writ was improvidently issued in this case. It is not the province of courts to encourage the practice of trying the validity of laws upon mandamus when it can be avoided. With four justices in every township, it can seldom be necessary to resort to such proceeding merely because a justice first applied to shall be of the opinion that a warrant should not issue, whether his judgment is based upon a question of fact or law. I therefore concur in the affirmance of the order, expressing no opinion on other questions.

GRANT, J., concurred with HOOKER, J.