[Civ. No. 527.   Third Appellate District.—January 27, 1909.]

## COUNTY OF MONO, Appellant, v. JAMES L. DEPAULI and LOUIS OLCESE, Partners, etc., Respondents.

COUNTY ORDINANCE — PUBLICATION — NAMES OF VOTERS — PASSAGE SHOWN—ABSENCE OF NEGATIVE VOTE—OMISSION OF ONE AFFIRMATIVE VOTE NOT INVALIDATING.—Although the publication of a county ordinance is necessary to its validity, and must be deemed mandatory, and it must show on its face that it was regularly passed, yet, when the names of the voters therefor, as published, show that four out of five supervisors voted for the ordinance, and the publication shows that there was no negative vote, it shows that the ordinance was passed, and the mere accidental omission to show the name of the chairman, who voted for it, as appears of record, does not show a substantial failure to comply with the statute, nor render the ordinance invalid.

ID.—UNCERTAINTY NOT PREJUDICIAL—PRESUMED MISTAKE OF PRINTER. In such case the mere uncertainty whether the chairman voted for the ordinance, or failed to vote at all, could not possibly prejudice anyone. The mistake is presumably that of the printer; and no one's rights could be prejudiced thereby.

ID.—CONTROLLING REASON FOR STATUTORY REQUIREMENT AS TO PUBLICATION OF NAMES.—The controlling reason for the statutory requirement as to the publication of the names of parties voting for and against the ordinance is to show the public and those interested that the ordinance was in reality passed by the requisite vote.

ID.—LICENSE TAX — SHEEP HERDING AND PASTURAGE — ACTION BY COUNTY—VALIDITY OF ORDINANCE—REVERSAL OF JUDGMENT UPON FINDINGS.—In an action by a county to recover a license tax imposed under a county ordinance regulating the business of raising, grazing, herding and pasturing sheep within the county, when all material facts are found for the plaintiff, and judgment went for defendants solely on the ground of the supposed invalidity of the ordinance imposing the tax, upon the determination by this court of that question to the contrary, the judgment will be reversed upon the finding, with directions to the court below to enter judgment for the plaintiff thereupon.

APPEAL from a judgment of the Superior Court of Mono County.   Wm. S. Wells, Judge Presiding.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney General, R. C. Van Fleet, Deputy Attorney General, and Pat. R. Parker, District Attorney of Mono County, for Appellant.

C. L. Claflin, for Respondents.

BURNETT, J.—This is an appeal from a judgment in favor of the defendants in an action brought by the county of Mono to recover the sum of five hundred and fifty ($550.00) dollars alleged to be due under a county ordinance numbered 90, which regulates the business of raising, grazing, herding, and pasturing sheep in Mono county and fixes as a license tax therefor the sum of five cents per head. In the court below, as stated by appellant, the ordinance was attacked on various grounds, to wit, that the county had no authority to regulate, or to attempt to regulate, such business, that the ordinance is unconstitutional and therefore void, that the license tax demanded is unwarranted, unreasonable and excessive, and that the ordinance never became effective because not published as required by the statute.

The trial court, relying upon the decision of the supreme court in *County of Plumas* v. *Wheeler,* 149 Cal. 758, [87 Pac. 909], and in *County of Sierra* v. *Flanigan,* 149 Cal. 769, [87 Pac. 913], held with plaintiff as to all these propositions except the last, but in that respect it adopted the view of defendants, basing the conclusion upon the following finding: "That the names of all the members voting for and against said ordinance were never published in any newspaper published in said county or elsewhere, but that when said ordinance was published there was published together therewith the names of four of the members as voting for the same and none voting against, as follows: 'this ordinance having been twice read, and duly considered by the board was put upon its passage and adopted and passed on the 8th day of April, 1904, by the following vote: Ayes: David Hays, N. W. Boyd, C. W. Rickey and J. A. Creaser. Noes, none. (Signed) R. G. Montrose, Chairman.' And the ordinance as published was duly attested by the clerk of said board and authenticated by the seal of said board. It thus appearing therefrom that R. G. Montrose had not voted, while as a matter of fact the said R. G. Montrose had voted 'aye' and the record of his vote had never been published." The materiality of this finding is evident.

from the provision in the County Government Act that "The enacting clause of all ordinances of the board shall be as follows: 'The board of supervisors of the County of ——— do ordain as follows.' Every ordinance shall be signed by the chairman of the board and attested by the clerk. On the passage of all ordinances the votes of the several members of the board shall be entered on the minutes, and all ordinances shall be entered at length in the ordinance book. No ordinance passed by the board shall take effect within less than fifteen days after its passage, and before the expiration of the said fifteen days the same shall be published, with the names of the members voting for and against the same for at least one week in some newspaper published in the county, if there be one, and if there be none published in the county, then such ordinance shall be posted at the court house door at least one week."

It is admitted that there was no departure from a strict compliance with the requirement of the statute save in the single instance of an omission to publish the name of the chairman as having voted "aye"; and the inquiry is thus presented whether for this reason it should be held that the ordinance is inoperative.

The publication is necessary to the validity of the ordinance, and the provision in reference thereto must be deemed, therefore, mandatory and not directory merely. In *San Luis Obispo* v. *Hendricks,* 71 Cal. 264, [11 Pac. 684], it is said: "The essential thing to be done was to publish the ordinance in some newspaper published in the county, if there was one, for at least one week, with the names of the members voting for and against the same." And in *People* v. *Russell,* 74 Cal. 578, [16 Pac. 395], it is held that "Under section 26 of the County Government Act of March 14, 1883, an ordinance of a board of supervisors of a county does not take effect until it has been published in its entirety, as required by that section, and a publication which omits the enacting clause of the ordinance is insufficient."

The only question, then, to determine is whether there has been a substantial adherence to the mandate of the statute.

It is not contested that the legislature has authority to provide the procedure to be pursued by the board of supervisors in the enactment of ordinances, but it is claimed by appellant, and rightly so, that to this as to other legislation must be ap-

plied the rule which requires a reasonable construction, keeping in view the obvious purpose of the law; and it is insisted that "Granting that the provision commanding the act to be performed is mandatory, if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purposes of the statute." In other words, the operation of the law is not to be circumvented and the purpose defeated by reason of some trivial irregularity or unimportant departure from the strict letter, which can be of prejudice to no one and which is not inconsonant with the manifest intention of the lawmakers.

In Sutherland on Statutory Construction, section 611, the rule is stated as follows: "When a statute is affirmative it does not necessarily imply that the mode or time mentioned in it is exclusive, and that the act provided for, if done at a different time, or in a different manner, will not have effect."

"Such is the literal implication, it is true; but since the letter may be modified to give effect to the intention, that implication is often prevented by another implication, namely, that the legislature intends what is reasonable, and especially that the act shall have effect; that its purpose shall not be thwarted by any trivial omission, or a departure from it in some formal, incidental or comparatively unimportant particular." And further on it is stated that "Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory."

In the *Matter of the Estate of W. B. Johnson, Deceased,* 98 Cal. 538, [33 Pac. 460], the question of whether the provision of the statute in relation to adoption requiring the examination of the child is mandatory was discussed by the supreme court, and it is there said, through Mr. Justice De Haven: "But the examination of a child whose consent to the contract is unnecessary, and who is of such tender years that it is incapable of exercising any judgment as to the effect of such contract upon its interests, would certainly be an idle thing to do, and the section should not receive such an extremely narrow and literal construction as to make the examination of such a child mandatory and its omission fatal to the creation of a valid contract binding upon adults who have done every-

thing required of them in order to manifest their full and free consent to such adoption." The court quotes with approval the following from *People* v. *Supervisors,* 34 N. Y. 272: "A strict and literal adherence to the letter and form of a statute in minor or nonessential particulars will often defeat a remedy or destroy a right which it was the principal intention of the legislature to create or provide. When the statute directs an act to be done in a certain way, or at a certain time, and a strict compliance as to time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded."

In *Kenaston* v. *Riker,* 146 Mich. 163, [109 N. W. 278], the supreme court of Michigan held that "Though a city's charter provides that ordinances to be regularly enacted shall be immediately recorded by the clerk, and the mayor and clerk shall authenticate the same by their official signatures on such record, failure of the clerk to copy an ordinance into the record book correctly does not invalidate it."

In *Smith* v. *Swain,* 71 N. H. 277, [52 Atl. 857], it is said by the supreme court of New Hampshire, that "We think the statute requiring school district clerks to deliver to the selectmen of the town an attested copy of every vote of the district to raise money within ten days after the meeting is directory, and not mandatory, in respect of time. . . . With this construction of the time limitation, which seems to have been established rather for the purpose of defining the clerk's duties than as a step necessarily precedent to the validity of his certification, we are of the opinion that the legality of the tax voted by the district is not affected by the failure of the clerk to certify it to the defendants until the expiration of six days beyond the statutory period."

In *Allen* v. *Allen,* 114 Wis. 615, [91 N. W. 218], the supreme court of Wisconsin construed the provision requiring the affidavit of publication of the list of delinquent taxes to be filed within six days after the last publication as directory merely, the court saying: "The penalty attached to the six-day requirement is a clear indication that its main object was to compel obedience on the part of the printer. So far as notice to the parties is concerned, every substantial right is as well conserved by the filing of the affidavit ten days after the last publication as by the filing within six days thereafter."

While the foregoing cases differ somewhat in their facts from the case at bar, they are illustrative of the modern spirit of judicial liberality in the interpretation of the law and the determination of the question of reasonable and substantial compliance with the requirement of the statute.

In this matter the primary purpose of the publication is obviously to give notice to the public of the terms of the ordinance and of the votes thereon in order that it may be seen that the ordinance has been regularly passed. Indeed, in *County of San Diego* v. *Harris,* 97 Cal., on page 600, [32 Pac. 594], it is said: "The object of publication is to impart notice to those who are or may be affected by its provisions. If an error occurs in the publication which does not affect the provisions of the ordinance affecting the defendant's liability or his defense against such liability it should be held immaterial." Here, as we have seen, the ordinance was published in full, the names of four of the supervisors are given as having voted for it and it is declared that none voted against it. They were all present, as shown by the minutes; therefore, the only uncertainty contained in the publication is as to whether the chairman of the board voted for the ordinance or failed to vote at all. This uncertainty, however, could not possibly prejudice anyone. No one's rights could be affected by this mistake—presumably of the printer. If anyone desired to ascertain the fact in relation to the vote of the said chairman, he could do so by consulting the minute-book or the book of ordinances of the board, as therein the names of all the members were recorded as having voted for the passage of the ordinance. If it be contended that one purpose of the publication of the votes is to subserve sound public policy by imparting information to the public of how each supervisor has voted, we should say that this is merely incidental to the main purpose, and the inadvertent omission of one name under the peculiar circumstances of this case should not be held to invalidate an ordinance in every other respect properly enacted. It is suggested that this view would lead to the conclusion that all the names might be omitted and still the ordinance declared valid, but we think the argument loses its force when the purpose of the publication is properly considered. If there had been no publication of the vote, we should be constrained to hold that there had been a failure to comply with the law in a material respect, as was the case in *Summit Co.* v. *Gustave-*

*son*, 18 Utah, 351, [54 Pac. 977], wherein a similar provision was held to be mandatory. In that case the supreme court of Utah declared: "The ordinance in question does not contain the name of any member of the board. It does not contain the name of any member who voted for or against it. It does not appear from the ordinance, as published, that any member of the county court voted for its adoption."

It is true that in the Utah case the court calls attention to the consideration of public policy involved in the question as follows: "It was designed by the statute to fix upon each member of the court who participated in the proceedings to pass the ordinance the exact share of the responsibility which he ought to bear, and that by such an unquestionable published record that he cannot at any time thereafter deny his participation therein, or the character of his vote, when questioned by his constituents, or when assailed in court. Whenever such ordinance is questioned, the county should not be required to sustain its authority by resorting to parol evidence of bystanders, or associates of the officials. The legislature understood too well the unsatisfactory character of that kind of evidence, and they did not intend that the power to call an officer to account for misconduct or error of judgment in the performance of an official act should depend upon that class of evidence. The legislature has therefore imperatively required that the ordinance as published should contain record evidence of a character that should not be open to contradiction or dispute." The inconvenience and uncertainty suggested, though, could not arise here, as we have seen, in view of the record in the minute-book and ordinance-book. The controlling reason for the requirement, however, is given by the court in the statement that it is designed "to show the public and those interested that the ordinance was in reality passed by a requisite vote."

We understand that the conclusion we have reached is not inharmonious with the views expressed by the supreme court in the cases cited by appellant. It is therein held that "the power to license comes from the legislature, and the power is expressed through the adoption and publication of ordinances in the manner provided by the granting power," or, as stated in *Zottman* v. *San Francisco*, 20 Cal. 102, [81 Am. Dec. 96] : "The rule is general and applies to the corporate authorities of all municipal bodies—when the mode, in which their power

on any given subject can be exercised is prescribed by their charter, the mode must be followed. The mode in such cases constitutes the measure of the power.''

We hold that the mode prescribed for the enactment of the ordinance must be followed, but since there was an honest effort to do so, and no one can possibly be injured by the inconsequential omission, it should be held, under the peculiar circumstances of this case, that there was a substantial compliance with the requirement of the statute.

The judgment in favor of the defendants, as we have seen, was due to the trial court's opinion that the publication was insufficient. As we view it, this was erroneous, and as all other material facts are found in favor of plaintiff, the judgment upon the findings should have been in its favor. The judgment is therefore reversed, with direction to enter judgment in favor of plaintiff.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 25, 1909.